350 So.2d 495 (1977)
Samuel GARTNER and Clara Gartner, Appellants,
v.
ATLANTIC NATIONAL BANK OF JACKSONVILLE, a National Banking Association, Appellee.
No. DD-212.
District Court of Appeal of Florida, First District.
September 20, 1977.
Rehearing Denied October 27, 1977.
Adam G. Adams, II, of Adams & Adams, Steven A. Werber, of Corrigan, Werber & Moore, Jacksonville, for appellants.
Anderson M. Foote, Jr., of Ulmer, Murchison, Ashby & Ball, Jacksonville, for appellee.
PER CURIAM:
Appellee Bank instituted this suit against Appellants alleging that the Appellants were indebted to the bank in the sum of $1,695,000.00 upon a written instrument of guaranty guaranteeing the obligations of Plummer's Cove Ltd. as debtor of the bank upon construction loans. Appellants filed answer admitting the execution and delivery of the guaranty but denied that they were indebted to the bank under such guaranty. In addition to such answer of admission and denial, Appellants filed affirmative defenses alleging that the bank was guilty of negligent and inequitable conduct in the disbursement and general inspection and management of the construction loan fund and agreement out of which the subject indebtedness arose. Appellants further alleged by such affirmative defenses that the bank's conduct in the handling of such construction loan fund and agreement was without the knowledge or consent of the Appellants and that such conduct prejudiced them, thereby totally or partially relieving them of their obligations under the guaranty agreement. Appellants also filed a counterclaim against the bank for damages claimed to have been suffered by them as the result of the alleged negligent conduct of the bank. The bank did not reply to the affirmative defenses but did answer the counterclaim. In such answer, the bank admitted that substantial portions of the work performed by the owner's contractor were not done in a workmanlike manner or *496 in accordance with the plans and specifications, and that the contractor was paid by the owner for work which was not done or which was incorrectly performed. The bank further admitted that the surety on the contractor's performance bond claimed to be released from its obligation under its bond by reason of the owner's (debtor's) conduct and by reason of alleged negligent conduct on the part of Appellee Bank. The bank admitted by such answer to the counterclaim that there were insufficient loan funds available to complete the project. But it denied that any negligent conduct on its part played any part in the defaults of the contractor or in the fact that there existed such insufficient loan funds for such purpose of completion.
Following the filing of its answer to Appellant's counterclaim, the Appellee Bank moved for summary judgment both as to the main suit of Appellant's and the counterclaim. Appellants had asked for jury trial in their answer and counterclaim.
The disbursement of funds by the bank from the construction loan was to be controlled by the provisions of a building loan agreement between the bank and the debtor (owner). The guaranty agreement, subject of this suit, obligates the guarantors, among whom are the Appellants, to guarantee the due and prompt payment and performances by the debtor of all its indebtednesses and liabilities under said building loan agreement. It is stated in the guaranty agreement that the purpose of the guaranty was to induce the bank to extend credit to the owner (debtor) pursuant to such building loan agreement.
Appellants allege that in and by the terms of the building loan agreement, the bank promised that as a condition to advancing funds to the debtor: (a) the loan documents would be current in all respects, (b) improvements would be constructed with good quality materials and in good and workmanlike condition and in strict accordance with the plans; (c) that the bank would obtain from the debtor evidence that prior bills had been paid and that there were no liens filed against the property, (d) that there were sufficient undisbursed loan funds to complete the project, and (e) that the bank would obtain from the debtor an architect's or engineer's certificate certifying the correctness of each such advance. Appellants contend that the bank disbursed the loan proceeds to the debtor without first having assurance that these conditions were met, thereby jeopardizing their obligations under their guaranty agreement.
In support of its motions for summary judgment, the bank attached affidavits of two of its officers in which they stated that they were not aware of changes in the plans and specifications and that they were not requested to approve changes and did not do so. But Mr. Nuzum gave a deposition in which he stated that in the course of his duties as loan officer of the bank, he customarily inspected the project and that the purpose of his inspection was to determine that the project was being built in accordance with the plans and specifications. He further stated that the inspecting architect for the project was either selected or approved by the bank, and that he, Nuzum, relied on the architect's certification in making disbursements. That at no time did he question the architect's certifications. He further deposed that early in 1974 he suspected that there would not be enough money to complete the project resulting from the contractor changing his schedule of values so that he could get more money on the front end of the contract. Contrary to his affidavit statement that he did not approve any changes in the plans and specifications, he acknowledged in his deposition that an additional loan of $120,000.00 was made for the purpose of paying the costs of change orders to the contract. He further stated in his deposition that he did approve payments to the contractor based upon such changes.
Although Appellants did not file any counter-affidavits in opposition to the motion for summary judgment, it is evident from the admissions made by the bank in its answer to the counterclaim and the testimony of Nuzum given in his deposition *497 which is a part of the record in this case that justiciable issues of fact exist in the record on the question of the bank's alleged negligence in the management of the construction loan fund and whether such conduct on its part materially affected the Appellant's liability under their guaranty agreement, all such as to forestall the entry of summary judgment. See Dorsy et al. v. Maryland National Bank, 334 So.2d 273 (Fla. 3 DCA 1976); Davis v. 7-Eleven Food Stores, Inc., 294 So.2d 111 (Fla. 1 DCA 1974); Jenkins v. Graham, 237 So.2d 330 (Fla. 4 DCA 1970).
Our Supreme Court has held that the constitutional right to jury trial demands that particular care be accorded in ruling on motions for summary judgment to the end that controverted issues of fact be resolved not upon pleadings and depositions but by the jury functioning under proper instructions. Drahota v. Taylor Construction Company, 89 So.2d 16 (Fla. 1956).
We therefore reverse the summary final judgment entered by the trial judge and remand for further proceedings in accordance with the views herein expressed.
MASON, ERNEST E., Associate Judge (Retired) and DREW, E. HARRIS, Associate Judge (Retired) concur.
SMITH, Acting C.J., dissents.
SMITH, Judge, dissenting:
The guarantors' argument, adopted by the majority opinion, transforms contractual obligations of the owner/debtor and guarantors to the bank into obligations at law of the bank to the guarantors. The duties thus transformed and imposed on the bank, exactly contrary to the written contracts between the parties, provide the only and inadequate basis for the guarantors' claim that the bank acted negligently in the disbursement of the construction funds and so have released the guarantors.
The allegations of the guarantors' complaint to the contrary notwithstanding, it was not the bank but the debtor which in writing covenanted to fulfill "the following conditions as to each advance": (a) "That the terms and conditions of the Loan Documents have been complied with and there is then no existing default thereunder"; (b) "That the Improvements have been constructed in a good and workmanlike manner in strict accordance with the Plans and materials used therein are of good quality"; (c) "That the Owner has procured (if required by Mortgagee) verified mechanics' lien waivers and receipted bills showing payment of all parties who have furnished materials or performed labor of any kind entering into the construction or installation of any of the Improvements"; (d) "That the Owner has furnished to the Mortgagee evidence satisfactory to the Mortgagee that the undisbursed proceeds of this Loan will be sufficient to pay the cost of completing the Improvements as required by the Loan Documents"; and (e) "That Owner has furnished to Mortgagee, at no cost to Mortgagee, in connection with each request for an advance, the certificate of such architect or engineer as Mortgagee shall designate that such advance, in the amount requested, is properly to be made by Mortgagee hereunder."
It was not the bank but the guarantors who contracted to assume performance of the debtor's obligations under the note and loan agreement concerning conditions for the advancement of funds. By the contract documents the bank undertook no similar duty affecting disbursements:
"Mortgagee may, at its option, disburse funds to Owner whether under the terms of this Building Loan Agreement such disbursement is required or not."
The burden of the guarantors' affirmative defense and counterclaim is that the bank, "without complying with or requiring said Owner to comply with the aforesaid conditions," disbursed funds to the owner for the payment of work not performed by the owner's contractor "in a workmanlike manner or in accordance with the plans and specifications" and "acquiesced in numerous changes and deviations from the plans and specifications." That is alleged to have resulted in a disclaimer of liability by Highlands Insurance Company on the owner's *498 payment and performance bonds, to which security the guarantors, upon satisfaction of the owner's liability, would be subrogated. However, the bank undertook no duty to protect the guarantors' access to the security from the consequences of the owner's failure to perform as agreed and as assured by the guarantors. Any doubt is dispelled by the explicit terms of the guaranty agreement:
"Guarantors authorize the Bank, without notice or demand, and without affecting Guarantors' liability hereunder, to make further advances to renew, compromise, extend, accelerate or otherwise change the time of payment of or otherwise to change the terms of the indebtednesses or other obligations of the [owner], or to increase or decrease the rate of interest; to take and hold security for the payment of this Guaranty or the obligations of the [owner], and to exchange, waive and release such security; to apply all security and to direct the order and manner of sale thereof; to release or substitute collateral." (Emphasis added.)
The additional loan of $120,000, referred to in the majority opinion, was supported by an additional promissory note executed by the owner, subject to the loan agreement, and by a separate "absolute and continuing" guaranty, incorporating the same terms, executed by the guarantors.
We need not speculate on the result if the bank were accused of fraud or overreaching; or of taking control of the debtor's affairs and the construction project itself, Dunson v. Stockton, Whatley, Davin & Co., 346 So.2d 603 (Fla. 1st DCA 1977); Dorsy v. Maryland Nat'l Bank, 334 So.2d 273 (Fla. 3d DCA 1976); or of releasing security in hand after the guarantors discharged the owner's debt.[1] The guarantors' contract does not offend public policy. Its terms authorizing the bank to release security  assuming the bank's actions in law constituted a release of security  are countenanced by Section 673.606(1)(b), Florida Statutes (1975).[2] The trial court gave effect to the contract as in my opinion it was bound to do. Home Development Co. of St. Petersburg v. Bursani, 178 So.2d 113, 117 (Fla. 1965), quoting Beach Resort Hotel Corp. v. Wieder, 79 So.2d 659, 663 (Fla. 1955).[3] I find no conflicts in the record evidence, but any that can be made to appear are immaterial. I would affirm.
NOTES
[1] Contrast Keller v. Gen. Motors Acceptance Corp., 233 La. 320, 96 So.2d 598 (1957), the cited authority for the overbroad American Jurisprudence statement, adopted by the Court in Dorsy, that "[T]he law imposes on the creditor an obligation not to deal with the debtor, or any security for the debt, in such a manner as to harm the interests of the guarantor." 38 Am.Jur.2d Guaranty 1135 (1968). The guaranty agreements here provide that "Guarantors shall have no right of subrogation until all of the obligations of the [owner] to the Bank have been paid in full, even though such obligations are in excess of Guarantors' liability hereunder."
[2] "The holder discharges any party to the instrument to the extent that without such party's consent the holder ... [u]njustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse" (emphasis added).
[3] "`[C]ourts may not rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain.'"