373 So.2d 415 (1979)
Bella PHILLIPS and Thom Phillips, Her Husband, Appellants,
v.
HARTFORD CASUALTY INSURANCE COMPANY, a Foreign Corporation, Publix Super Markets, Inc., a Florida Corporation, George Hunt, Inc., a Florida Corporation, and Gulf American Fire and Casualty Company, a Foreign Corporation, Appellees.
No. 78-2691.
District Court of Appeal of Florida, Fourth District.
July 25, 1979.
Cynthia S. Prettyman of Montgomery, Lytal, Reiter, Denney & Searcy, P.A., West Palm Beach, for appellants.
D. Culver Smith, III of Adams, Coogler, Watson & Smith, West Palm Beach, for appellees-George Hunt, Inc., and Gulf American.
DAUKSCH, Judge.
Appellants urge the trial court erred in granting a summary judgment against them in this personal injury action. It is alleged Bella Phillips was leaving a grocery store along with an employee of the store, a bag boy, and as she walked down a ramp leading from the store to the parking area her way was partially blocked by a truck parked on the ramp. The appellee, Hunt, was a building contractor working for the store in making alterations, improvements or repairs. Although Bella Phillips does not know exactly how it happened, she says she was walking down the ramp, felt something bump her and fell from the ramp injuring herself. She alleges a duty was owed her by Hunt and the duty was breached by failing to warn her of dangerous conditions extant in the ramp. She also alleges Hunt was negligent in its maintenance of the ramp by allowing "hidden and latent dangers" to exist.
In her deposition Bella Phillips said the truck was parked in such a way as to cause her to have to go to the side of the ramp which was unprotected by guard rails. She said also the concrete or metal parts of the ramp which later were there, were not *416 there on the day she fell. She said she felt a bump, went sailing through the air, landed on her head and was injured.
Because we have determined the allegations in the complaint and the deposition of the appellant are sufficient to raise an issue of fact as to whether Hunt was negligent and breached a duty owed Phillips and because Hunt failed to carry the heavy burden placed upon a movant for summary judgment in negating and overcoming all reasonable inferences in favor of the opposing party, we must reverse the summary judgment. Holl v. Talcott, 191 So.2d 40 (Fla. 1966). The cases are legion to say summary judgments should be granted rarely. Especially on point here is Luckey v. City of Orlando, 264 So.2d 99 (Fla. 4th DCA 1972) where a lady was walking across a metal strip leading into a business establishment and tripped and fell injuring herself. We said the business invitee was entitled to be warned by the storekeeper of any defects and a jury should decide the issues of lack of warning, existence of defects, [comparative] negligence and others. See also Brynes v. Publix Super Markets, Inc., 272 So.2d 218 (Fla. 4th DCA 1973); Suhr v. Dade County, 198 So.2d 837 (Fla. 3d DCA 1967).
The summary judgment is reversed and the cause remanded for further proceedings.
REVERSED and REMANDED.
CROSS, J., concurs.
LETTS, J., dissents with opinion.
LETTS, Judge, dissenting:
I dissent.
The majority opinion typifies the reason why trial judges so often admit that they will never grant summary judgments even though they are so inclined, simply because the appellate courts invariably reverse them.
Rule 1.510 of the Florida Rules of Civil Procedure calls for the granting of a summary judgment when the pleadings, depositions et cetera show that there is no genuine issue as to any material fact. In the case now before us I believe Judge Nourse was entitled to so conclude. The amended complaint, in essence, accuses the appellees of maintaining a ramp, on which the plaintiff tripped, in an unfinished condition and still under construction, as a result of which the appellant "... lost her footing and fell to the ground off to the side of the above mentioned ramp."
Excerpts from the appellant's deposition reveal the following questions and answers:
Q All right. What happened at Publix that day?
A To be honest, to be frank, I went up the ramp and I went into the store. I did notice the truck there, but I went into the store, did my shopping. I came out, and the truck was still parked on top of the ramp. Because I spent two hours in the store, anyway, when I shop, thinking that it would be moved. I came out of the store, and the bagger was behind me. Now, I couldn't tell you whether he bumped me or whether I slipped off or whether I fell off, I could not even answer that to this day, I couldn't even tell you what really happened. All I know is I went off that ramp, flying. I tried to grab something to hang onto, and I just slid all the way and landed on my whole left side. That's all I can tell you. And that's the God's honest truth. I could not tell you anything more because I don't remember anything more.
Q Okay. You don't know whether you slipped, right?
A I didn't slip, that's for sure.
Q Well then, 
A But I couldn't honestly say what happened. I couldn't tell you really what happened.
Q You say for all you know the guy pushing the cart bumped you?
A I felt a bump. He might have bumped me, I really don't know what happened. I couldn't honestly say what happened.

*417 Q Okay. So you don't know what caused you to fall, right?
A I do not. I was in a good mood, I was laughing and joking with everybody in the store, with all my friends. I came out in a good mood, and that's all I know.
Q Has anyone told you that they saw you fall?
A Has anyone told me?
Q Do you know if anyone saw you fall?
A Well, quite a few people seen me go, but I don't know who they are.
Q Has anyone told you what caused you to fall?
A No.
* * * * * *
Q Did the truck, was it big enough to go all the way from one side of the ramp to the other side?
A No, sir, it took up the whole ramp.
Q It went from one end of the ramp to the other?
A Well, it took up the whole ramp.
Q Okay. So you were not  you were not walking down the ramp, then, when this happened?
A No. I got out of the store  I got out of the store (indicating), and the boy led me to right  turning, you know, away from the truck, to go off the ramp.
Q So you were going to step off either the sidewalk curb or the edge of the ramp?
A The beginning of the ramp.
Q Where the ramp comes, joins the sidewalk, in front of the store?
A A little bit below.
Q Okay.
A Of the sidewalk.
Q And you were about to step off of there?
A Yes, sir.
Q All right. And when you were bumped, you 
A Everything went black.
Q Okay. And it was the moment you were bumped that you went sailing?
A Went sailing.
Q Okay. And you went sailing head-first?
A I went sailing, and I tried to grab something, there was nothing there to grab. And my head hit the ground first and I slid all the way on the left side.
Q Okay.
A All the ribs, this arm, my knee, my head.
Q In other words, your feet didn't slip out from under you and land on your back?
A No, it did not.
Q Something bumped you and you fell forward?
A Yes, sir. I slid right across.
The foregoing colloquy does not support any material issues of fact pertaining to any alleged dangerous condition existing on the ramp which caused the appellant to lose her footing. Indeed it is not even clear that she was actually on the offending ramp when she fell. The best I can get out of her testimony is that she thinks she probably fell because the bag boy bumped her. However, she makes no such allegation in the complaint. There is no testimony from anyone else and no sworn affidavits on file.
If we cannot affirm a case such as this, we may as well make it official and once and for all, remove the provision in the rules permitting summary disposition. But see Fletcher v. Petman Enterprises, Inc., 324 So.2d 135 (Fla. 3d DCA 1975).