396 So.2d 258 (1981)
Kenneth F. CASSEL and Shirley Ann Cassel, Personal Representatives of Kenneth Reagan Cassel, Deceased, Appellants,
v.
J. Frank PRICE, Fred D. Higginbotham, and Fred Crews, Their Successors and Assigns, As Trustee for First United Pentecostal Church, Also Known As Jacksonville Christian Academy and Preferred Risk Mutual Insurance Company, Appellees.
No. XX-15.
District Court of Appeal of Florida, First District.
April 7, 1981.
*259 David R. Lewis, of Lewis, Paul, Isaac & Castillo, and Mary L. Nelson, of Penland, McCranie & Shad, Jacksonville, for appellants.
William R. Swain and William T. Stone, of Webb, Swain & Watson, Jacksonville, for appellees.
LARRY G. SMITH, Judge.
Appellants appeal a final summary judgment finding no liability in their suit seeking damages for the death of their eleven year old son, who died as a result of a fall from a mulberry tree on the grounds of appellees' private church school, at which the child was a student. Appellants contend that the trial court erred in rejecting their claim of liability based upon the attractive nuisance doctrine, as well as upon ordinary negligence principles arising from the relationship between the school and the deceased child as a "business invitee"; and they further contend that although their second amended complaint was couched in terms broad enough to sustain their claim based upon the "business invitee" theory, the trial court further committed error in denying their motion to file an amended complaint, containing a second count based upon the school-student relationship. Our conclusion, from examination of the pleadings and record, and consideration of the briefs of the parties, is that there is no view of the facts affording a reasonable conclusion of negligence on the part of the defendant, and the summary judgment finding no liability must therefore be affirmed.
The facts of the case, as stated by appellants, are fairly simple and mostly undisputed. The decedent was an eleven year old student enrolled at the private school. He was in a car pool with two other students and was to be picked up at the end of the school day by the mother of the other two children. On the fatal day, at the close of the school day, that mother arrived to pick up the three boys, when it was learned that one of the other children was being kept after school for a short period by his teacher, apparently for disciplinary reasons. The driving mother decided to run a shopping errand, and at the request of the decedent and the other child, left them at the school grounds to play. After her departure, the two boys crossed the road or drive-way separating the school building from other school grounds, and the decedent climbed a large mulberry tree on the school property, near the area used by the school for parking and school recreation. While in the tree, the deceased child was picking mulberry blooms and throwing them to his companion on the ground, when he apparently lost his balance and fell to the ground. Upon falling, according to allegations of the complaint and a supporting affidavit filed in opposition to the motion for summary judgment, the deceased child struck his head on a broken piece of concrete block which, along with other old and broken pieces of brick and block left over from the school's *260 building program, had been used by the school to fill in depressions around the tree. This filled area was covered over with a thin covering of dirt which originally hid all of the broken brick and block, but may have, by the passage of time, become thinned out further.[1] The injuries received by the child when it struck the debris proved to be fatal.
The first complaint consisted of two counts: The first count was founded upon attractive nuisance, and lack of supervision by the school; and the second count was founded upon the alleged failure of the defendant to maintain the premises in a safe condition, and failure to warn the deceased minor of the dangerous, unsafe conditions created by the condition of the ground underneath the tree. Upon motion, this complaint was dismissed and an amended complaint was filed. This complaint contained one count alleging negligence based upon the duty of the school to provide a safe place to play; a second count founded upon negligent supervision; and a third count alleging the existence of an insurance contract of which the deceased child was a beneficiary. A motion to dismiss this complaint was also granted. Finally, a second amended complaint was filed. This complaint contained only one count, based upon the "attractive nuisance" theory, alleging in substance that the mulberry tree was an attractive nuisance, and that the partially covered pieces of brick or concrete lying beneath the tree constituted a latent danger or hidden trap, as a consequence of which the child received his fatal injuries.
The motion to dismiss this second amended complaint was denied, and trial was scheduled for the week of May 12, 1980. On March 28, 1980 defendants filed a motion for summary judgment in which it was contended, among other things, that although the debris beneath the tree had been covered with sand, it was nevertheless open and visible; that there was no trap or hidden danger upon the premises, and thus no basis for recovery on the attractive nuisance doctrine; and that the defendants were entitled to summary judgment as a matter of law. On April 15, 1980, prior to ruling on defendants' motion for summary judgment, appellants filed a motion to further amend their complaint, seeking to add a count alleging negligence on the part of the school based upon its duty toward the deceased student as a business invitee. The trial judge entered a final summary judgment, founding his decision upon a determination that a tree is not an attractive nuisance, and that no cause of action on that theory could be supported based upon the undisputed facts. He further ruled that by filing the second amended complaint the plaintiffs appeared to have abandoned their count or claim based upon the business invitee relationship, and that in view of the lateness of the request for amendment, it should be denied.
Appellants obviously seek to draw inferences and conclusions from the undisputed facts in such a way as to support their contention that a jury issue is presented. However, there is no actual disputed fact in this case, with the sole exception of the extent to which the broken pieces of brick or concrete block were exposed and visible, if at all, through the thin covering of sand. For reasons which we will discuss, we find that this did not present a "genuine issue of material fact" precluding entry of a summary judgment for defendants.
We begin our discussion with the observation that issues of negligence and probable cause are ordinarily questions for the jury if reasonable men can arrive at different conclusions, but these issues become questions of law if the facts point to but one possible conclusion. See 23 Fla. Jur., Negligence, §§ 129, 133; Loftin v. McGregor, 152 Fla. 813, 14 So.2d 574 (1943); Nielsen v. City of Sarasota, 110 So.2d 417 (Fla. 2nd DCA 1959), cert. dismd., 117 So.2d 731 (Fla. 1960); Helman v. Seaboard Coast Line Railroad Company, 349 So.2d 1187 *261 (Fla. 1977); Seaboard Coast Line Railroad Company v. Griffis, 381 So.2d 1063 (Fla. 1st DCA 1979).
Unfortunately, these often-repeated maxims offer little guidance for decision in the difficult cases, and this is particularly so when, as here, the ruling of the court has the effect of adjudicating the rights of those seeking redress for the tragic death of an innocent child. However, so long as our system of laws recognizes a dividing line between conduct which may properly require a party to be subjected to the burden of trial and the risk of an adverse jury verdict for damages, and conduct which will not, the trial and appellate courts often have a duty, difficult as the task may be, of drawing that line. Russell v. Jacksonville Gas Corporation, 117 So.2d 29 (Fla. 1st DCA 1960).
Despite the difficulties, and added complexities brought about by the adoption of the comparative negligence rule[2], the trial and appellate courts of Florida continue to find cases requiring a court determination of no liability.[3] Furthermore, it is evident that a court may determine as a matter of law "that reasonable men could not differ," without the appellate judges themselves in a given case agreeing unanimously, and such a determination may also be made even in the face of a contrary decision by a jury composed, ostensibly, of "reasonable men."[4]
Summary judgment, although sparingly used in negligence cases,[5] is nevertheless *262 a proper and necessary means for accomplishing the purpose of terminating litigation short of a jury trial, which satisfies the constitutional "right of access" to the courts as a means of resolving civil disputes.[6]
There is much discussion of the "attractive nuisance" doctrine in the briefs and we are required to rule on that asserted theory of liability. The trial judge's discussion of the law (as above indicated) is confined solely to that theory of liability. Appellants urge however, that their second amended complaint (admittedly couched in attractive nuisance terms) contains allegation of fact sufficient to require consideration under other theories of liability, and we agree.[7] Therefore, notwithstanding the trial judge's ruling that appellants "abandoned" their claim based upon negligent breach of defendant's duties to the minor child as a "business invitee," to have the play and recreation areas of the school grounds in a reasonably safe condition, we have considered the arguments presented by appellants on that ground also.[8]
Since we have determined that the trial court's ultimate disposition of the case was correct, we affirm, even though we base our decision in part on reasons not stated in the judgment. 3 Fla.Jur.2d, Appellate Review, § 296.
The attractive nuisance theory is clearly inapplicable, and we concur with the trial judge's ruling on this point. No decision from the Florida courts, nor from any other jurisdiction (so far as has been made to appear to us) has held a tree to be an attractive nuisance under circumstances similar to those appearing here. See Annotation, 59 A.L.R.3d 848, "Trees or Shrubs As Attractive Nuisance," reviewing a number of cases in which it has been generally held *263 that trees, shrubs, or the like, when considered alone or in combination with other circumstances, (with exception of electrical wires running through the trees) cannot be the basis for imposition of liability based upon the attractive nuisance doctrine.
The dismissal of a complaint was affirmed in an Alabama case involving facts somewhat similar to those presented here, Mullins v. Pannell, 289 Ala. 252, 266 So.2d 862 (1972). In that case it was alleged that children played in and around the tree, and climbed the tree, with the knowledge and permission of the defendant, and that while climbing the tree, a dead limb broke, causing the plaintiff to fall on a portion of the debris, planks or boards lying beneath the tree, resulting in his injuries. The Alabama court held that natural objects such as a tree, are not regarded as constituting an attractive nuisance; and the court refused to extend the doctrine because of the addition of debris, a dog house, some scraps of lumber, planks or boards in and around and under the tree.
The annotation (59 A.L.R.3d 848) contains no case in which liability was found other than those involving electric wires running through the tree, as in Stark v. Holtzclaw, 90 Fla. 207, 105 So. 330, 41 A.L.R. 1323 (1925). Cf. Johns v. Clay Electrical Co-Op Assn., Inc., 50 So.2d 710 (Fla. 1951). In Stark v. Holtzclaw, supra, a child was severely burned from coming into contact with bare electrical wires passing through the branches of a magnolia tree into which the child had climbed. There is no similarity to be found in the facts of that case, and the present one, except that a mulberry tree, like a magnolia tree, can be considered an attraction to active children. However, there is lacking in this case the element of a "hidden danger," or "trap," without which the attractive nuisance doctrine does not apply. See Edwards v. Maule Industries Inc., 147 So.2d 5 (Fla. 3rd DCA 1962), holding that piles of sand, which toppled and fell upon a child, causing his death, did not constitute an attractive nuisance.
In McDaniel v. Mendez, 198 So.2d 75 (Fla. 3rd DCA 1967), where a child fell from a couch striking her head on a concrete floor, the court held that the couch was not "inherently dangerous nor a trap," nor was it maintained in such a manner as to create a dangerous condition, and did not constitute an attractive nuisance. In Jackson v. Whitmire Construction Company, 202 So.2d 861 (Fla. 2nd DCA 1967), it was held that a pile of sand, rock, and broken asphalt, upon which a child was injured when a piece of shell and tar became dislodged, and fell on him, did not constitute an attractive nuisance. A condition cannot be deemed to involve an unreasonable risk of death or serious bodily harm the court said, "unless it inherently presents a hidden and unusual element of danger in such a way as to constitute a trap for them." (Id. at 863)
In Kwoka v. Campbell, 296 So.2d 629 (Fla. 3rd DCA 1974), the court determined that a summary judgment in favor of the defendant was correctly entered by the trial court. In Kwoka, a tree in front of the defendant's home contained a tree house, with a rope hanging from the limb of the tree which had been put there by the defendant prior to the accident. Shortly before the accident, unknown to the defendant, children had attached an automobile tire to the end of the rope, which they sat in as a swing, using a bicycle innertube attached to the tire as a back rest. As the minor plaintiff swung outward on the tire, the innertube broke, causing him to fall backwards and upon a paved driveway which was directly under him at the point where he fell. In affirming the summary judgment, the appellate court found that there was no "reasonable inference" that the defendant, by allowing the rope to hang from the tree in such a position that it might be made into a swing which would have an arc partly over a paved area, violated a duty of reasonable care to the neighborhood child.
Without extending discussion of the attractive nuisance cases further, we think it is sufficient to note that with exception of the case of Stark v. Holtzclaw, supra, appellants have cited to us no case finding liability based upon a child's climbing of a *264 tree. The element of an inherently dangerous factor, such as the deadly force of electricity in Stark, is totally absent in this case. The danger of falling from the tree was not a condition created by appellees here, and the attractive nuisance doctrine does not protect one against his own clear fault. Sparks v. Castleberry Gardens, Inc., 227 So.2d 686 (Fla. 4th DCA 1969).
As previously noted, appellants urge that their case does not rest solely upon the attractive nuisance doctrine, although they do not concede the nonexistence of liability on that theory. They assert, and we think correctly, that the attractive nuisance theory is a legal fiction invoked for the purpose of transforming a trespassing child to the status of an invitee, thereby enabling the child to recover for injuries caused by ordinary negligence. It has been suggested by this court in at least one case that if the child already occupies the status of invitee, there is no necessity to invoke the doctrine. Crutchfield v. Adams, 152 So.2d 808, 810 (Fla. 1st DCA 1963); and see Concrete Construction Inc. of Lake Worth v. Peterson, 216 So.2d 221 (Fla. 1968). We concede that it would be improper to judge defendants' liability in this case solely on attractive nuisance concepts. Note that Kwoka v. Campbell, supra, was not an attractive nuisance case. However, to the extent that appellants' cause of action depends upon the existence of an unreasonably dangerous hidden or latent condition, Kwoka and the attractive nuisance cases reviewed nevertheless tend to support our conclusion that the defendant was not guilty of negligence under the facts presented here.
The two basic duties owed by a landowner to invitees have been recently reiterated in Pittman v. Volusia County, 380 So.2d 1192 (Fla. 5th DCA 1980), quoting from Maldonado v. Jack M. Berry Grove Corp., 351 So.2d 967, 970 (Fla. 1977), as follows:
In Florida, a landowner owes two duties to a business invitee: (1) to use reasonable care in maintaining the premises in a reasonably safe condition; and (2) to give the invitee warning of concealed perils which are or should be known to the landowner, and which are unknown to the invitee and cannot be discovered by him through the exercise of due care.
It is still fundamental, of course, that the mere occurrence of an accident does not give rise to an inference of negligence, and is not sufficient for a finding of negligence on the part of anyone. Robinson v. Allstate Insurance Company, 367 So.2d 708 (Fla. 3rd DCA 1979); Marcano v. Puhalovich, 362 So.2d 439 (Fla. 4th DCA 1978); Lash v. Nolan, 321 So.2d 104 (Fla. 4th DCA 1975); and City Cab of Orlando Inc. v. Green, 308 So.2d 540 (Fla. 4th DCA 1975).
Liability is imposed upon the landowner only if natural or artificial conditions involve an "unreasonable risk." Gifford v. Galaxie of Homes of Tampa, Inc., 194 So.2d 25 (Fla. 2nd DCA 1967), cert. dis. 204 So.2d 1 (Fla. 1967); Grall v. Risden, 167 So.2d 610 (Fla. 2nd DCA 1964); Crutchfield v. Adams, supra. If no reasonable duty has been abrogated, no negligence can be found. Rice v. Florida Power and Light Co., 363 So.2d 834 (Fla. 3rd DCA 1978). A person is not required to take measures to avoid a danger which the circumstances as known to him do not suggest as likely to happen. Sprick v. North Shore Hospital, 121 So.2d 682 (Fla. 3rd DCA 1960).
No contention is made, nor could it reasonably be argued, that the condition of the ground under the tree, upon which the child fell, posed any inherent danger, or created any unusual condition not ordinarily found under trees in their natural state. Hardpacked earth, rocks, and projecting or sparsely buried roots from the tree itself abound in nature. It is also a fact of life that innumerable objects are commonly found under trees. Fixed objects such as flower gardens with brick borders, rock gardens, curbs, driveways, sidewalks, fences, benches, and, particularly in play areas, moveable objects such as lunch boxes, roller skates, baseball bats and bicycles. The consequences of a fall of sufficient height from any tree, particularly if a vital part of the body such as the head strikes the ground, can be disastrous, as in the *265 present case, without negligence or fault of any kind on the part of any other person. To impose upon the landowner the duty to anticipate and guard against the consequences of a falling child striking a hard ground surface, or some hard object on the surface of the ground, particularly in the absence of actual notice or knowledge of injuries produced by the same circumstances on the owner's premises in the past, would impose an unreasonable and prohibitively burdensome duty upon the owner which we find no justification in the law to impose. "Perfection of conduct is humanly impossible, and the law does not exact an unreasonable amount of care from anyone. The degree of care required is ordinary and reasonable care." 23 Fla.Jur., Negligence, § 19.
The duty of a person to use care, and his consequent liability for negligence, depends upon the tendency of his acts to cause harm to another under the circumstances as they are known, or should be known by him. 23 Fla.Jur., Negligence, § 17; Firestone Tire & Rubber Co. Inc. v. Lippincott, supra; Stanage v. Bilbo, supra; Melton v. Estes, supra; Vermont Mutual Insurance Company v. Conway, supra, footnote 3. As one court has expressed it "foresight of harm lies at the foundation of duty to use care and therefore of negligence." Memorial Park Inc. v. Spinelli, 342 So.2d 829 (Fla. 2nd DCA 1977). Although "foreseeability" as related to the question of proximate cause is to be distinguished from foreseeability as a determining factor of whether a duty exists, 23 Fla.Jur., Negligence, § 29 we find here, both from the standpoint of duty and proximate cause, that the actions of the defendant here are insufficient to impose liability for the fatal injury.
In Gibson v. Avis Rent-A-Car Systems, Inc., 386 So.2d 520 (Fla. 1980), the issue was "foreseeability" in relation to proximate cause. The Gibson case arose from a multiple-car collision on an interstate highway. In sorting out the issue of the scope of the risk assumed by the driver of the first car, who was presumably negligent, the court spelled out three categories of "harm" which may be examined to determine liability (Id. at 522):
First, the legislature may specify the type of harm for which a tortfeasor is liable... . Second, it may be shown that the particular defendant had actual knowledge that the same type of harm has resulted in the past from the same type of negligent conduct.... Finally, there is the type of harm that has so frequently resulted from the same type of negligence that "`in the field of human experience' the same type of result may be expected again." (citations omitted)
Applying these tests here, we find (1) no legislation; (2) no allegation that any other child had received injuries from a fall to the ground beneath the mulberry tree, and (3) no basis for the contention that the same type of harm has so frequently resulted from the same type of negligence that "in the field of human experience" the same type of result may be expected again. As to this third category, we observe simply that trees and tree-climbers have been with us for many centuries, but appellants have not brought to our attention any case in which liability for injuries received in an accidental fall from a tree to the ground has been predicated upon the lack of "fallworthiness" of the ground surface.[9] We further observe that there are no technological, social or economic changes that would suggest the necessity for a reappraisal of established negligence law or its application to the circumstances presented here.
In finding no liability as a matter of law the court in Rice v. Florida Power and Light Co., supra, clearly focused on foreseeability as a factor in determining the existence of a duty on the part of the power company. The facts in Rice were that the plaintiff's decedent was electrocuted when *266 a control line model airplane he was flying came into contact with a highly charged overhead electrical wire. One of the issues urged by the plaintiff was that a change in use of the field where the accident occurred, from expanded residential growth to primarily recreational use, created a genuine issue as to the duty to relocate or insulate the wires, or provide a warning concerning the hazard. There the court said (Id. at 839):
Had a clear view of the exposed lines not existed, or had FPL had actual notice that individuals were flying model airplanes attached to electrical conductors, the changed use of the underlying property might have been sufficiently persuasive to leave the questions of the existence of a duty and a breach of that duty for the resolution of a jury.
The analysis by the court in Rice, as in Gibson, takes into account the absence of actual knowledge by the defendant of the specific danger that resulted in the injury, as one of the elements determining liability, or absence of liability. Similarly, we note the absence of actual knowledge of any similar accident in the case now before us. See also Jenkins v. City of Miami Beach, 389 So.2d 1195 (Fla. 3rd DCA 1980).
As for the matter of causation, we think it would be mere speculation to assume that the covered or partially covered pieces of broken brick or concrete block had any bearing upon the child's decision to climb the tree. Before a jury would be permitted to find that defendant's conduct contributed to the child's death there would have to be facts which would afford a reasonable basis for a conclusion that it is "more likely than not" that the conduct of defendant was "a substantial factor in bringing about that result." See Greene v. Flewelling, 366 So.2d 777 (Fla. 2nd DCA 1978), quoting from Prosser, The Law of Torts, 241 (4th Ed. 1971). The quotation continues (opinion page 781):
A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.
See also Greenhouse Inc. v. Thiermann, 288 So.2d 566 (Fla. 2nd DCA 1974). There must be such a natural, direct and continuous sequence between the negligent act and the injury that it can reasonably be said that but for the act the injury would not have occurred. Fellows v. Citizens Federal Savings & Loan Assn., 383 So.2d 1140 (Fla. 4th DCA 1980). We think it was just as likely as not, under the circumstances of this case, that a child's decision to climb the tree would have been the same had the pieces of broken brick or block been clearly visible. In any event, liability cannot be predicated, under the circumstances presented here, upon the mere possibility that a climbing child might assume, incorrectly, that the ground surface would cushion his fall from the tree.[10] Although it might well be that the injuries to the child were exacerbated by hitting a piece of concrete block, it cannot reasonably be found on an "after the fact" basis that the partially covered debris "caused" the injury.[11] Since the only possible factual issue was the extent to which the pieces of concrete were partially covered with sand and thus hidden from view, the trial judge properly granted the motion for summary judgment.
The judgment is affirmed.
McCORD, J., and LILES, WOODIE A., Associate Judge (Ret.), concur.
NOTES
[1] We have recited the facts substantially as they are stated in appellant Shirley Ann Cassel's brief. See footnote 8, infra, for further description of the accident site as it evolved in the pleadings filed by appellants.
[2] Hoffman v. Jones, 280 So.2d 431 (Fla. 1973); Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977). See particularly specially concurring opinions of Judge Ervin in Mansur v. Eubanks, 368 So.2d 645 (Fla. 1st DCA 1979), and Bennett v. Mattison, 382 So.2d 873 (Fla. 1st DCA 1980), and dissenting opinion in Melton v. Estes, 379 So.2d 961 (Fla. 1st DCA 1979). Compare with Zambito v. Southland Recreation Enterprises, 383 So.2d 989 (Fla. 2nd DCA 1980).
[3] Jenkins v. City of Miami Beach, 389 So.2d 1195 (Fla. 3rd DCA 1980), (summary judgment affirmed, no foreseeability); Phillips v. Styers, 388 So.2d 221 (Fla. 2nd DCA 1980), (recovery barred, plaintiff's negligence sole cause of accident); Firestone Tire & Rubber Co. Inc. v. Lippincott, 383 So.2d 1181 (Fla. 4th DCA 1980), (jury verdict for plaintiff reversed, injury not foreseeable); Fellows v. Citizens Federal Savings & Loan Assn., 383 So.2d 1140 (Fla. 4th DCA 1980), (summary judgment for defendant affirmed, negligent design of driveway not legal cause of accident); Stanage v. Bilbo, 382 So.2d 423 (Fla. 5th DCA 1980), (summary judgment for defendant affirmed, sale of beer to teenager, injury to another from accidental shotgun discharge, not actionable negligence); Melton v. Estes, 379 So.2d 961 (Fla. 1st DCA 1979), (summary judgment for defendant affirmed, no foreseeability); Gaidymowizc v. Winn-Dixie Stores, Inc., 371 So.2d 212 (Fla. 3rd DCA 1979), (directed verdict for defendant affirmed, no knowledge of dangerous condition); Alves v. Adler Built Industries, 366 So.2d 802 (Fla. 3rd DCA 1979), (summary judgment for defendant affirmed, two year old child drowned playing in sand pile next to lake, neglect of parents sole proximate cause); Mansur v. Eubanks, 368 So.2d 645 (Fla. 1st DCA 1979), (summary judgment for defendant affirmed, landlord not liable to tenant in possession for gas explosion in apartment); Vermont Mutual Insurance Company v. Conway, 358 So.2d 123 (Fla. 1st DCA 1978), (jury verdict for plaintiff reversed, no foreseeability of creating a dangerous condition.)

Of course, during the same period covered by the foregoing cases, the appellate courts have had occasions to disapprove of court determinations on negligence issues, for example: Gibson v. Avis Rent-A-Car Systems, Inc., 386 So.2d 520 (Fla. 1980), (directed verdict for defendant reversed); Jackson v. Williams, 385 So.2d 190 (Fla. 5th DCA 1980), (summary judgment for defendant reversed); Zambito v. Southland Recreation Enterprises, 383 So.2d 989 (Fla. 2nd DCA 1980), (dismissal of complaint reversed); Bennett v. Mattison, 382 So.2d 873 (Fla. 1st DCA 1980), (directed verdict for defendant reversed); Squitieri v. Aetna Casualty & Surety Company, 382 So.2d 730 (Fla. 5th DCA 1980), (summary judgment for defendant reversed); Pittman v. Volusia County, 380 So.2d 1192 (Fla. 5th DCA 1980), (directed verdict for defendant reversed); Eachus v. Big Daddy's Lounges, Inc., 380 So.2d 1154 (Fla. 3rd DCA 1980); Phillips v. Hartford Casualty Insurance Company, 373 So.2d 415 (Fla. 4th DCA 1979), (summary judgment for defendant reversed).
[4] See dissents in Jenkins v. City of Miami Beach, Melton v. Estes, Alves v. Adler Built Industries, supra, footnote 3. See reversal of jury verdicts, Firestone Tire & Rubber v. Lippincott, Vermont Mutual v. Conway, supra, footnote 3.
[5] Harris v. City of Neptune Beach, 214 So.2d 25 (Fla. 1st DCA 1968), citing Holl v. Talcott, 191 So.2d 40 (Fla. 1966); Squitieri v. Aetna Casualty & Surety Co., 382 So.2d 730 (Fla. 5th DCA 1980). See, however, the lament of Judge Letts, dissenting in Phillips v. Hartford Casualty Insurance Company, 373 So.2d 415 (Fla. 4th DCA 1979): "The majority opinion typifies the reason why trial judges so often admit that they will never grant summary judgments even though they are so inclined, simply because the appellate courts invariably reverse them." (Id. at 416).
[6] However, the constitutional right of jury trial demands that particular care be exercised in the granting of summary judgments. Gartner v. Atlantic National Bank of Jacksonville, 350 So.2d 495 (Fla. 1st DCA 1977).
[7] The complaint alleges that the decedent was a "fee-paying student" at the school; that the decedent was an invitee, having just completed his classes and was awaiting his car pool to take him home; that the defendants negligently maintained the grounds surrounding the mulberry tree on the school grounds in that they had "filled the area around the tree with broken concrete blocks and bricks and covered over those blocks and bricks with a thin layer of dirt, constituting a latent and hidden danger or trap ..."; that defendants knew or should have known that "young children would be attracted to climb the tree to gather the fruit," and, "due to their youth and inexperience and the thin layer of dirt covering the blocks and bricks" would not "realize the danger lying below the tree when they dropped or fell from the tree." Further, that "as a result of defendants' said negligence, the decedent struck his head on a concrete block or brick just below the dirt surface under the tree and received mortal injuries from which he shortly died."

We note that the original complaint, which was dismissed by the court, particularly identified the area of the accident as in the "parking lot area," and that the parking lot area "was constructed by defendants and was a dirt covered driveway filled with cement blocks, bricks and other debris encircling several large mulberry trees." The first amended complaint, dismissed by the court, also identified the site as the "parking lot area," and that the dangerous condition consisted of "surrounding" one of the mulberry trees with cement blocks and bricks, thinly covered with dirt. The second amended complaint was less specific than either the original or amended complaint as to the exact site of the accident. However, it is clear that the school-student relationship and the duty to use care commensurate with that relationship were clearly alleged in all versions of the complaint. In reviewing the second amended complaint in this light, therefore we are not passing upon any question not already ruled upon by the trial judge.
[8] Our determination that the second amended complaint fails to state a cause of action under either theory obviates the necessity of a ruling on whether the trial judge abused his discretion in refusing to allow the belated filing of a third amended complaint adding a count on the "school invitee" theory. See and compare allegations of original and first amended complaints, and comments on court's ruling, footnote 7, supra.
[9] Compare "crashworthiness" doctrine, Ford Motor Company v. Evancho, 327 So.2d 201 (Fla. 1976).
[10] "`Probable cause' is not `possible cause.' `Foreseeable' is not `what might possibly occur.'" Bryant v. Jax Liquors, 352 So.2d 542 (Fla. 1st DCA 1977); State, Agcy. of Stephen Boyles v. Simer, 363 So.2d 357 (Fla.App.); Stanage v. Bilbo, supra, footnote 3; Firestone Tire & Rubber Co. Inc. v. Lippincott, supra, footnote 3.
[11] Our decision obviously may not be construed as condoning the creation of an inherently dangerous condition or "trap" for tree-climbing children.