465 So.2d 552 (1985)
John CLARK, Appellant,
v.
LUMBERMANS MUTUAL INSURANCE COMPANY and Orange Park Assembly of God, Appellees.
Case No. AU-168.
District Court of Appeal of Florida, First District.
March 7, 1985.
Rehearing Denied April 10, 1985.
*553 Adam H. Lawrence of Lawrence & Daniels, Miami, and Brent M. Turbow, Jacksonville, for appellant.
Charles Cook Howell III of Howell, Liles, Braddock & Milton, Jacksonville, for appellees.
SMITH, Judge.
John Clark, plaintiff below, appeals a final summary judgment in favor of the appellees in this negligence action. After an examination of the whole record, we conclude that no interpretation of the undisputed material facts would support a finding of liability for negligence on the part of the appellee Orange Park Assembly of God (hereinafter "church"). We affirm.
The following facts, taken from depositions filed in this cause, are germane to this appeal. Appellant suffered a broken neck and was rendered a quadriplegic during a diving accident on the St. Mary's River, located in Nassau County, Florida. The accident occurred during a canoe trip and picnic sponsored, planned and conducted by the appellee church. The church had hired Mr. Gary Hines to be its "minister of youth." Hines, a paid, full-time employee of the church, was to direct and coordinate the activities of the church's youthful members. The trip in question took place June 13, 1981. Its logistics were planned and coordinated by Hines. Approximately 40 to 50 people, including appellant, ultimately participated in the trip. Appellant, a high school graduate, was twenty-one years of age at the time of his injury. He was, in his own words, in excellent health, a good swimmer who was familiar with various water sports.
On the day of appellant's accident, trip members were transported by church bus and van to a canoe rental establishment located on the St. Mary's River called the Canoe Outpost. Hines did not attempt extensive instructions to trip members regarding canoe operation or the physical characteristics of the river they were about to traverse. Trip members were instructed by Hines that suitable beaches for swimming existed on the river; however, Hines acknowledged that he had not made inquiries prior to the trip as to the location or suitability of any of the river's beaches.
During the trip, appellant and a canoeing companion, Lee Brannen, sighted what they thought was a suitable place for swimming, and beached their canoes. Brannen testified that he ran out into the water approximately three steps and then executed a shallow, racing-type dive into the water, which was approximately chest deep on Brannen, who was six feet one inch tall. Brannen testified he felt it would be "crazy" to attempt a "deep dive," as he had not yet ascertained the exact depth of the water. Appellant then attempted to execute a similar dive, following what both he and Brannen testified was essentially the same path Brannen had taken in making his dive. Both testified that appellant's dive differed from Brannen's. Brannen testified that appellant had not run as far into the water as Brannen had, and that appellant jumped somewhat higher prior to the dive in a manner Brannen characterized as a "piking" of appellant's body, with the result that appellant's head and arms preceded the rest of his body into the water. Unfortunately, the result of appellant's attempted dive was a broken neck and consequent paralysis. The record is unclear as to what, exactly, caused appellant's injuries, since appellant was unable to state categorically that he hit his head on the river bottom as a result of his dive. However, all deponents testified that the river bottom area where appellant dove was clear of obstructions.
Appellant instituted the pending action alleging, among other things, that the appellee church had violated its duty to warn of the shallowness of the water in the beach area, where appellant had attempted his dive, failed to determine in advance the safe and unsafe areas to swim along the *554 St. Mary's River, and failed to point out proper sites for swimming and diving by the trip members. Appellant also alleged that the church had failed to adequately supervise the canoeing trip.
Appellees moved for summary judgment, asserting that the church breached no legal duty owed the appellant; that appellant had actual knowledge of the allegedly dangerous condition of the beach where his accident occurred; and that appellant's actions constituted the sole proximate cause of his injury. The trial court granted the motion for summary judgment, finding that the beach area where appellant's accident occurred contained no latent or unknown dangers; that the appellee church did not breach any legal duty owed the appellant; and that appellant's actions were the sole proximate cause of his injury. This appeal followed.
We are governed by certain well known principles applicable in negligence actions. Issues of negligence and probable cause will normally be answerable only by a jury, and not by motion for summary judgment, unless the facts adduced "point to but one possible conclusion." Cassel v. Price, 396 So.2d 258, 260 (Fla. 1st DCA 1981) (citations omitted), rev. den. mem., 407 So.2d 1102 (Fla. 1981). In order to prevail on a motion for summary judgment in a negligence action, the defendant must show either no negligence on his part proximately resulting in injury to the plaintiff, or that the plaintiff's negligence was the sole proximate cause of his injury. Goode v. Walt Disney World Co., 425 So.2d 1151, 1154 (Fla. 5th DCA 1982), rev. den. mem., 436 So.2d 101 (Fla. 1983). However, as often stated, "the mere occurrence of an accident does not give rise to an inference of negligence, and is not sufficient for a finding of negligence on the part of anyone." Cassel v. Price, supra, at 264 (citations omitted). Judged by these standards, we find that the trial court correctly granted appellees' motion for summary judgment.
Initially, we find without merit appellant's attempt to affix liability based upon breach of a duty of due care by the church as a "possessor" or "occupier" of land. Appellant contends that the church, by allowing appellant and other members of the trip to utilize the beach where appellant was injured, constructively "possessed" this portion of the beach area, citing Arias v. State Farm Fire and Casualty Company, 426 So.2d 1136 (Fla. 1st DCA 1983). We disagree. In Arias, the plaintiff was injured after a "john boat" in which she was a passenger collided with a partially submerged diving dock located in a lake directly in front of lakefront property owned by a defendant on Lake Hampton, in Bradford County. The defendant in Arias argued that since the land beneath the lake was owned by the state, rather than by the defendant, he was not in a position to exercise control over the land upon which the submerged dock rested, and hence he owed the plaintiff no duty to warn of the hazard. The Arias court rejected this contention, stating:
The liability of an occupant of real property for injuries caused by an alleged dangerous defective condition on the premises depends generally upon his control of the property, regardless of whether he has title thereto, or whether he has a superior right to possession of property which is in the possession and control of another. (citation omitted)
Id. at 1138.
There are no facts in this case which would tend to satisfy the elements of "possession" or "control" which led to the court's decision in Arias. The facts in Arias were that the nearly submerged dock was located several hundred feet directly in front of the defendant's lakefront property, and that while it was located in the lake before defendant bought the property, the defendant had modified it by placing a thin shelled cement surface on the dock. The Arias court held that it could not be determined, as a matter of law, that the defendant had "failed to maintain the requisite control over the boat dock." 426 So.2d at 1138. Here, by contrast, the church had no actual or constructive "presence" at the beach prior to the accident. *555 Appellant and Brannen were the first two canoeists to reach the beach, and hence "occupy" it. Hines arrived a number of minutes after the appellant and other members of the group, and made no attempt to exercise "de facto" control over the beach or over activities on the beach.
Moreover, the view that potential liability may exist under facts such as found in Arias is premised upon the existence of a hidden danger of which the land owner or occupier has or should have superior knowledge, as compared to the injured party. Here, no evidence was produced to establish the existence of any hidden dangers at the situs of the accident. It was uncontradicted that the river bottom and the beach contained no rocks or obstructions. Nor can the depth of the water itself have been considered a hidden danger, since both appellant and Brannen testified that they were well aware of its relatively shallow depth. Switzer v. Dye, 177 So.2d 539 (Fla. 1st DCA 1965). Appellant testified that he was aware of the danger of diving into shallow water, and was aware that the water depth at the beach where he was injured was indeed properly characterized as shallow. Hence, there existed in the case at bar no "hidden danger" so as to trigger the rule in Arias.
We think the same result is required here if the potential liability of the church is considered in relation to its duty to investigate the river for dangerous conditions. The "harmful condition" of the beach (assuming, without accepting, the correctness of this characterization by appellant) was recognized and hence was obvious to all who testified below. Therefore, no breach of duty occurred, since the "harmful condition" was in fact obvious to appellant, who indisputably possessed sufficient maturity to appreciate the danger, and was not in a dependency relationship with the appellee church. See Bradshaw v. Rawlings, 612 F.2d 135 (3d Cir.1979), cert. den., 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1980); cf. Rupp v. Bryant, 417 So.2d 658 (Fla. 1982) (school children between the ages of seventeen and eighteen considered to be under an in loco parentis relationship vis-a-vis school officials).
Appellant also maintains that the church assumed a duty of due care by voluntarily acting as a "tour guide" in organizing and conducting the canoeing trip upon which appellant was injured, citing Kaufman v. A-1 Bus Lines, Inc., 416 So.2d 863 (Fla. 3d DCA 1982) (Kaufman II). There, the plaintiff was injured when she fell off a catwalk while touring a museum visited by tour groups sponsored by the defendant. The Third District had previously affirmed the Kaufman trial court's dismissal of Ms. Kaufman's initial complaint, but did so without prejudice to her right to file an amended complaint alleging defendant's actual knowledge of the allegedly dangerous condition that caused her injury. Kaufman v. A-1 Bus Lines, Inc., 363 So.2d 61 (Fla. 3d DCA 1978) (Kaufman I). Subsequently, Ms. Kaufman filed an amended complaint alleging that the defendant's actual knowledge of the allegedly dangerous condition causing her injury created a duty to warn on the defendant's part. The court in Kaufman II found that the defendant could be held liable for negligence while acting as a tour guide, based on the well-known proposition that an action undertaken for the benefit of another, even if performed gratuitously, must be performed in accordance with the duty to exercise due care. 416 So.2d at 864; see also Padgett v. School Board of Escambia County, 395 So.2d 584 (Fla. 1st DCA 1981).
We agree with appellant that a church's sponsorship and organization of a canoeing trip could give rise to a legal duty to exercise reasonable care in exercising these responsibilities. Padgett, supra. We observe, however, that Kaufman II is distinguishable from the case at bar due to the Kaufman II defendant's status as a common carrier. Furthermore, in view of the undisputed evidence concerning the circumstances under which the accident occurred, we do not find it necessary to examine the *556 extent of the church's duty in this case, or to categorize the relationship between plaintiff and defendant here, which would otherwise guide our decision in determining whether the church carried its burden of showing the absence of evidence indicating a breach of duty by the church causing injury to appellant, as required to entitle it to summary judgment.[1]
Even assuming, arguendo, that the church owed a duty of adequate supervision to appellant, the breach of which would render it liable for ordinary negligence, appellant can be barred from recovery if his own action in diving into the shallow water was the sole proximate cause of his accident. Phillips v. Styers, 388 So.2d 221 (Fla. 2d DCA 1980), quoting Haufman v. Jones, 280 So.2d 431, 438 (Fla. 1973): "A plaintiff is barred from recovering damages for loss or injury caused by the negligence of another only when the plaintiff's negligence is the sole legal cause of the damage." We hold that appellant was properly barred from proceeding further with his claim because the evidence below is susceptible to no conclusion other than that he had sufficient intelligence, experience, and knowledge to  and in fact did  both detect and appreciate the physical characteristics of the swimming place in question and the potential danger involved in attempting his shallow water dive. See, Lister v. Campbell, 371 So.2d 133 (Fla. 1st DCA 1979), Hughes v. Roarin 20's, Inc., 455 So.2d 422 (Fla. 2d DCA 1984).[2]
For the foregoing reasons, the judgment below is
AFFIRMED.
MILLS and NIMMONS, JJ., concur.
NOTES
[1] Cf., Section 768.13, Florida Statutes (1981), the "Good Samaritan Act," with commercial transactions (Kaufman II, the "tour guide" situation) and dependency relationships (Rupp; schools in an in loco parentis relationship with students).
[2] See, also, Bourn v. Herring, 225 Ga. 67, 166 S.E.2d 89 (1969), appeal dismissed, 400 U.S. 922, 91 S.Ct. 192, 27 L.Ed.2d 183 (1970) (church and its representatives held not liable for negligent supervision of Sunday school picnic at lake resort during which youth drowned while attempting to swim from platform in deep water back to shore).