SMITH, Judge,
specially concurring.
I agree to reverse. The test is whether the undisputed facts established by the defendants conclusively show that plaintiffs will be unable to present evidence at trial from which a jury reasonably can conclude that defendants were guilty of negligence which was a proximate cause of the accident. Defendants may do this in one of two ways: either by conclusively proving the absence of any negligence on their part proximately resulting in injury to the minor plaintiff, or by showing conclusively that the plaintiff’s own negligence was the sole proximate cause of his injury. Clark v. Lumberman’s Mutual Insurance Company, 465 So.2d 552, 554 (Fla. 1st DCA 1985).
Were this court sitting as a jury, it would be difficult to find that the greater weight of the evidence adduced thus far would support a verdict for the plaintiffs. But neither we nor the trial court are jurors, and it is not our province to weigh and consider the facts and the reasonable inferences therefrom in order to arrive at a resolution of this controversy in favor of one side or the other. This weighing process is distinctly a trial function. It may well develop at trial that the evidence will be such that the trial court may properly direct a verdict for one or both of the defendants. However, the case is not at the directed verdict stage.
In reviewing the affidavits and depositions of record, I find numerous instances of conflicts regarding the basic facts, and I find it possible to interpret the eyewitness descriptions of just what occurred in various ways. The strongest point in defendants’ favor is the absence of any direct testimony establishing the presence of a foreign object at the precise spot on the lake bottom where Michael Locke struck his head when he dived. But the evidence *1351 tending to establish the nonexistence of any such object, though persuasive, is not conclusive. None of the witnesses’ affidavits or depositions established that they closely examined the exact spot to discover any object, only that they were present at the location and did not see anything, and others who looked for something in the water saw nothing. Defendants rely on the assumption by the witnesses that if any object was present on the lake bottom it would have been visible, and if visible, it would have been seen. Were we weighing the evidence as jurors in the absence of direct or circumstantial evidence pointing to the presence of any foreign object on the lake bottom, I would be inclined to agree that nothing was there except the lake bottom. On the other hand, there is testimony of at least one eyewitness that no one made any effort to examine the lake bottom at the precise location of the injury shortly after it happened. There is evidence that the property owners had placed at least two five-gallon plastic buckets filled with concrete in the swimming area for use in anchoring their boat, although it is maintained that these buckets were at a depth of some six feet of water. No one testified that they went into the water and located these buckets on the day of the accident.
The evidence is particularly vague as to the location of the floating dock in relation to the spot where the accident occurred. Michael Locke stated that the dock was at the water’s edge in very shallow water, while others place it in waist-deep or deeper water and several feet from shore. It is not disputed, however, that the dock was secured by underwater anchors. Whether the dock or its anchors were within or without the area subject to the defendants’ dominion or control, or within the area which defendants’ guests could reasonably anticipate was provided for their beach activities, is unclear. Any effort to glean from the several affidavits and depositions a precise set of measurements as to the exact spot where the accident occurred, the relative locations of known objects and water depth measurements, is in itself an exercise in weighing and estimating. The record is replete with estimates of distances expressed in contradictory terms, and often without any basis upon which these descriptions can be translated into definite units of measurement by one reading the cold record. There is evidence that the water level in this lake fluctuates, so that the relative location of objects from the water’s edge, and the depth of these objects, would necessarily vary from time to time. If we accept the engineering evidence that the lake bottom has a ten percent (10%) slope, it is obvious that this would have an appreciable effect on estimates concerning water depths and location of objects at different times. Thus, an object placed in three feet of water on one day could reasonably be expected to be some thirty feet from the water’s edge, but with a one foot drop in water level the same object on another day could be at a depth of two feet and only twenty feet from the water’s edge. There is no evidence whatever relating to whether the water level was up or down on the day in question. It appears to me that the task of reconciling the evidence in this case is one for the jury.
I would, however, reject the affidavits of Dr. Villanueva and Mr. Lawniczak filed by plaintiffs. These affidavits purport to establish, as a matter of expert opinion, that the minor plaintiffs’ injuries were caused by hitting “a foreign, man-made object.” Neither affidavit sets forth a single fact to support this conclusion, and should not be considered. Food Fair Stores v. Trusell, 131 So.2d 730 (Fla.1961). Although the trial judge in his order granting summary judgment did not specifically refer to these affidavits, I suspect that it might have prompted his observation that the affidavits of the plaintiffs “are based purely on conjecture.”