**NORWEST BANK EAST ST. PAUL, Respondent,**

v.

**John O. LARSON, et al., Appellants,**

**John K. Cook, et al., Defendants.**

**No. C4–85–1574.**

Court of Appeals of Minnesota.

Jan. 28, 1986.

Review Granted March 27, 1986.

Ralph L. Moore, Peter B. Stein, Stein & Moore, St. Paul, for respondent.

Douglas M. Stevens, Michael W. McNabb, Stevens, McNabb & Stewart, Burnsville, for appellants.

Heard, considered, and decided by LESLIE, P.J., and WOZNIAK and HUSPENI, JJ.

### OPINION

HUSPENI, Judge.

Respondent Norwest Bank East St. Paul (Bank) brought this action to enforce a

mortgage agreement it had with appellants John and Janet Larson. The trial court granted summary judgment in favor of the Bank. The mortgaged property was sold in a foreclosure sale and a deficiency judgment was entered against the Larsons for $46,588. On appeal, the Larsons argue that they were released from their obligations under the note and mortgage. We affirm.

## FACTS

In December 1978, the Larsons purchased an eleven-unit apartment building as investment property. They assumed a preexisting mortgage which the Bank held on the property. In August 1979, in order to make necessary improvements on the building, the Larsons borrowed additional money from the Bank and executed a new note and mortgage with the Bank in the amount of $95,000.

The mortgage contained the following due-on-sale provision:[1]

**17. Transfer of the Property; Assumption.** If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 17, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Mortgage and the Note.

In September 1981, the Larsons conveyed the property by warranty deed to John and Avery Cook.

Because the mortgage had a "due on sale" clause, the Bank was asked to allow the Cooks to assume the mortgage. In response to the request, a Bank loan officer sent a letter to the company that was handling the closing between the Cooks and the Larsons. The letter requested that the Cooks complete an application and return it to the Bank along with copies of the transfer deed and the hazard insurance policy. The Bank does' not have this application or any other reference to the Cooks in its file on the Larsons' mortgage. Neither the loan officer nor Warren Sandberg, the manager of the Bank's real estate department, knows what happened to this application.

The Bank apparently received the necessary information back from the closing company, because the Bank needed the paperwork in order to complete the assumption. The Bank did accept the Cooks' assumption of the mortgage and, subsequently, the Bank accepted mortgage payments from the Cooks.

Thereafter, the Cooks stopped making the payments and the loan went into default. In October 1983, the Bank sent default notices to both the Cooks and the Larsons. John Larson claims that he was not notified of the Cooks' default until the middle of 1984.

In 1984, the Cooks filed a petition in bankruptcy court. The Bank obtained an order from the bankruptcy court permitting it to proceed with foreclosure on its

1. This clause is part of the uniform mortgage form developed by the Federal Home Loan Mortgage Corporation and the Federal National Mortgage Association.

mortgage. It then commenced this action against the Larsons.

The Bank states that it has a standard practice of differentiating between an assumption of a mortgage without a release of the original borrower and an assumption with a release. In the case of an assumption without a release, the Bank charges a fee of fifty dollars and requires the new owner to complete a credit report. In the case of an assumption with a release, the Bank charges a fee that equals one percent of the outstanding loan and it requires the prospective purchaser to qualify as an original borrower, and the Bank executes some form of written agreement indicating its intent to release the original borrower.

In his deposition, Sandberg testified that an assumption with a release is very rare. He could not specifically remember any releases during his tenure at the Bank between 1978 and 1982. He estimated that there were probably less than five, if any, such releases.

John Larson is an experienced realtor. Since he received his real estate license in 1979, he has been in the real estate business. He admits that he never contacted the Bank regarding the assumption. In his deposition, John Larson states that he thought his liability was released because the Cooks completed the necessary application and returned it to the Bank and the Bank accepted payments from the Cooks.

The parties both sought summary judgment in their favor. The parties stipulated that there was no dispute as to any material facts.

The trial court determined that the Larsons were not released from their liability on the note and mortgage. The court granted summary judgment in favor of the Bank and ordered that the property be foreclosed and that a deficiency judgment be entered against the Larsons. After the sale, a deficiency judgment of $46,588 was entered against the Larsons.

## ISSUE

Did the trial court err in granting summary judgment to the Bank on the basis that the Larsons were not released from their liability on the note and mortgage?

## ANALYSIS

The function of this court when reviewing a summary judgment award is to determine whether there are any genuine issues of material fact for trial and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). Neither party argues that there are any factual issues here. They only address the correctness of the trial court's application of the law and they both seek judgment in their favor.

The Larsons argue that the Bank released them from liability on the note and mortgage. They contend that the Bank's assent to the Cooks' assumption of the mortgage operated as a release of their liability. The Larsons also attack the Bank's method of differentiating between an assumption without a release and an assumption with a release. The Larsons' arguments are not persuasive.

■ The mortgage agreement itself does not support the Larsons' argument. Paragraph 17 of the mortgage agreement requires the transferee to execute a written assumption agreement and that assumption must be accepted in writing by the Bank. Here, there is no evidence that the Cooks executed a written assumption agreement. It appears from the record that they did fill out some form of credit application and returned it to the Bank. There is no evidence, however, that this application form included a written assumption agreement. In addition, there is no evidence that the Bank executed a written acceptance of the Cooks' assumption agreement.

■ Further, general principles of mortgage law do not support the Larsons' argument. The general rule of mortgages is:

Absent a release or contract of novation, a mortgagor is not exonerated from personal liability on his bond or note by conveying the mortgaged premises to a

third party who assumes the mortgage regardless of lender's acceptance of grantee's payments on the mortgage, assuming the terms of repayment are not varied.

*Berg v. Liberty Federal Savings & Loan Association,* 428 A.2d 347, 349 (Del.1981). Thus, a mortgagee's assent to a purchaser's assumption of a debt by itself does not automatically release the original borrower from liability for the debt. *See Codner v. Siegel,* 246 Ga. 368, 369 n. 2, 271 S.E.2d 465, 466 n. 2 (1980) (the bank's letter to the purchaser in which the Bank agreed to the assumption of the mortgage did not release the mortgagor because the letter did not state that the holder of the prior note and security deed released the mortgagor from liability). Hence, the mere fact that the Bank assented to the Cooks' assumption does not mean that the Larsons were released from their liability. There is no other evidence that would support the Larsons' claim that they were released.

In addition, Sandberg testified in his deposition that it is common practice for the Bank to assent to an assumption of a mortgage without releasing the original borrower. There is often a trade-off present in this practice. Here, while the mortgagee certainly could not have prevented the mortgagors from selling the property, it could have invoked the "due on sale" clause. *See Holiday Acres No. 3 v. Midwest Federal Savings & Loan Association of Minneapolis,* 308 N.W.2d 471, 484 (Minn.1981). It did not. Instead, it allowed the new buyers to assume the existing mortgage while still continuing the mortgagors' liability.

Sandberg further stated that an assumption with a release is very rare. We believe that if the Larsons were in fact released from their mortgage, there would be some evidence of the release in the Bank's records or computer. There is no such evidence.

We also note that it is common for a lending institution to have two different procedures for an assumption with a release and one without. In fact, state banking law provides for two different procedures with respect to residential loans. Minn.Stat. § 47.20, subd. 6 (1984) provides that a bank can charge different fees for assumptions depending upon whether the original borrower is released or not.

## DECISION

The trial court did not err when it determined that the Larsons were not released from their liability on the note and mortgage and awarded summary judgment in favor of the Bank.

Affirmed.

LESLIE, P.J., dissents.

LESLIE, Judge (dissenting).

I respectfully dissent.

After citing the "due on sale" paragraph, appellants argue in their memorandum in support of summary judgment:

The intent of the paragraph is clear. The bank has the right to approve an assumption and property transfer based on the creditworthiness of the transferee and a satisfactory interest rate to the bank.

All parties agree that the bank waived its option to accelerate and approved the Cooks' assumption of the mortgage. Paragraph 17 clearly provides upon approval of an assumption the lender shall release borrower from all obligations under the mortgage and the note.

Paragraph 17 does refer to a written acceptance of the assumption. The obvious purpose of such a writing is to preclude any misunderstanding and to serve as evidence of the acceptance. Where the bank has in fact accepted the assumption, as in this case, the absence of a writing cannot be relied upon by the bank to avoid the release of the original mortgagor which results from the acceptance.

There is no language in paragraph 17 referring to different types of assumptions as alleged by plaintiff, one with release of liability and one assumption without release of liability. Paragraph

17 is clear that when an assumption is approved, the borrower is released from all obligations under the mortgage and the note.

I believe this argument is sound and would reverse and grant the Larsons summary judgment.