**Peter OLSON, trustee for the next of kin of David Olson, deceased, Respondent,**

**v.**

**RAMSEY COUNTY, et al., Appellants,**

**Lutheran Social Services, Respondent,**

**John Doe, et al., Defendants.**

**No. C4–92–1741.**

Court of Appeals of Minnesota.

March 16, 1993.

Review Granted April 29, 1993.

Gary Stoneking, Stoneking & Associates, P.A., Minneapolis, for Olson, respondent.

Tom Foley, Ramsey County Atty., C. David Dietz, Asst. County Atty., St. Paul, for Ramsey County, et al., appellants.

Kenneth A. Skrien, Skrien and Magnus, Eagan, for Lutheran Social Services, respondent.

Considered and decided by AMUNDSON, P.J., and HUSPENI and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Respondent Peter Olson, trustee for the next of kin of David Olson, deceased, brought a wrongful death action against

appellants Ramsey County and Kimaka White and respondent Lutheran Social Services. Count I of the complaint alleged negligence and Count II alleged a constitutional "freedom from harm" claim. The county and White moved for summary judgment. The trial court granted summary judgment with respect to Count II but denied it with respect to Count I. The county appeals the denial of summary judgment as to Count I. We affirm.

## FACTS

Olson brought this wrongful death action against the county and White, alleging that the county placed decedent, Olson's grandson, under the control and supervision of Ramsey County Child Protection Services, and that the county and White were negligent in failing to act to protect decedent from a known risk of harm or death by failing to follow through with recommendations for decedent's living arrangements, failing to visit him, and failing to require periodic physical evaluations, and that the failure to act constituted a breach of duty and thereby caused his death.

The following facts are undisputed. On September 17, 1987, decedent, then two years old, was brought to the emergency room at St. Paul Ramsey Medical Center by his mother, Karen Olson, and social worker Jackie Thompson of Lutheran Social Services. Decedent had multiple scars, both old and new, on his buttocks. His mother admitted that both she and her boyfriend had beaten him. The emergency room physician diagnosed the injuries as child abuse and reported that they were painful but not life threatening, and that, according to Thompson, there was no risk in sending the child home.

On September 20, 1987 Jack Jones, a Ramsey County Child Protection Intake worker visited the mother and her children in their home. He substantiated this as a case of child abuse in his report but determined that the children were not in immediate danger.

On September 27, 1987, the case was assigned to White of the county's Human Services Department. On September 30, 1987, White phoned the mother and arranged to meet her on October 7, 1987 to discuss the abuse and a treatment plan. They discussed a case plan under which the mother was to attend therapy and parenting classes, see Thompson on a regular basis, and abstain from abusing her children. White completed a written case plan but left a blank space where the form requested that she indicate the frequency of contact between herself and decedent.

On October 15, 1987, White saw the mother and decedent in White's office, and during December of 1987 and January of 1988, White monitored the mother's progress through phone and personal contacts with her therapists and with Thompson. White remained in phone contact with the mother but did not see decedent after October 15, 1987.

On March 2, 1988, decedent was brought to the hospital with a fatal head injury. The mother pleaded guilty to decedent's murder and her boyfriend, Ray Graham, was convicted of malicious child punishment.

## ISSUES

1. Are the county and White entitled to discretionary immunity from Olson's negligence claim?

2. Were the county and White not negligent as a matter of law?

## ANALYSIS

On review of a summary judgment, or denial thereof, this court must determine whether genuine issues of material fact exist and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The county and White contend that as a matter of law they are immune from liability on Olson's negligence claim pursuant to the doctrine of discretionary immunity and that, as a matter of law, their actions were not the proximate cause of decedent's death. The parties have not raised the issue of whether White is protected by the doctrine of official immunity.

■ 1. Governments are generally subject to liability for their torts or those of their employees acting within the scope of their employment or duties. *See* Minn. Stat. § 466.02 (1990). One of the exceptions to this liability is a

> claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

Minn.Stat. § 466.03, subd. 6 (1990). To determine whether particular conduct is protected, it is necessary to distinguish planning or policy level decisions from those at the operational level. *Holmquist v. State*, 425 N.W.2d 230, 232 (Minn.1988). Policy decisions are protected while operational or "day-to-day" decisions are not. *Id.* If the challenged decision involves a policymaking decision entrusted to the political branches of government it is to be protected from judicial second-guessing. *Id.* The crucial inquiry is whether the challenged action involves a balancing of policy objectives. *Nusbaum v. Blue Earth County*, 422 N.W.2d 713, 722 (Minn.1988).

■ The discretionary immunity doctrine must be interpreted narrowly, and the focus must be on the purpose underlying the exception. *Holmquist*, 425 N.W.2d at 231. In order to be immune from liability the state must produce evidence that the conduct was of a policymaking nature involving social, political, or economical considerations. *Nusbaum*, 422 N.W.2d at 722. While most governmental acts involve some discretion, they are not all entitled to discretionary immunity. *Cairl v. State*, 323 N.W.2d 20, 23 (Minn.1982).

■ We conclude that the actions of which Olson complains constituted policy implementation rather than policy formation. *See Sayers v. Beltrami County*, 472 N.W.2d 656, 662 (Minn.App.1991), *rev. on other grounds*, 481 N.W.2d 547 (Minn. 1992). Olson's complaint concerns White's day-to-day handling of the case: whether she visited decedent with necessary frequency, whether she sufficiently studied his living arrangements, and whether regular physical evaluations were conducted on an on-going basis.

The county and White argue that the decisions a child protection worker makes in balancing the competing goals of protecting the child and reuniting the family are governmental decisions that should be protected by discretionary immunity. The problem with this argument is that White's actions in balancing the goals of child protection and family reunification is not part of Olson's complaint. Olson complains that White did not adequately implement a sound social work plan. He does not complain that a plan implemented by White was faulty in that it favored reuniting the family over protecting the child. Moreover, the county and White have not presented evidence that White decided not to see decedent because of a policy decision concerning family reunification.

In support of their discretionary immunity argument, the county and White rely on *Cairl v. State*, 323 N.W.2d 20 (Minn.1982), which involved a case worker's decision to grant a delinquent, retarded individual, with dangerous propensities, a holiday release from Brainerd State Hospital. The individual subsequently started a fire which killed one person and injured another. The supreme court upheld the trial court's grant of summary judgment holding that the decision to release was protected by the doctrine of discretionary immunity.

We find this case distinguishable from *Cairl*. The *Cairl* decision was based on the determination that the decision to release the individual was based on the state's policy of open-door treatment of the mentally ill which the threat of liability would potentially frustrate. *See Holmquist*, 425 N.W.2d at 232. The decision to release was not protected simply because it involved a professional evaluation of competing factors. *Id.*

Therefore, although White may have evaluated competing factors in deciding to limit her direct involvement in decedent's case, the discretion involved in this evaluation is not the type of discretion which is protected. As the *Holmquist* court stated:

> Read literally, the discretionary function exception would preserve immunity for

almost all government acts because almost everything a government employee does, from driving a snow plow to formulating toxic waste disposal regulations, involves the exercise of some discretion. We have recognized, however, that the legislature did not intend the discretionary function exception to swallow the general rule of allowing recovery for those injuries negligently inflicted in the performance of government operations. *Holmquist*, 425 N.W.2d at 231 (citation omitted). Therefore, the fact that White may have been using her discretion in not visiting the mother and decedent does not mean that she and the county are entitled to immunity.

The county and White also cite case law from Iowa and Michigan where immunity was granted for the government's decision to keep children in their abusive homes rather than remove them. As mentioned previously, however, it is not the decision to keep decedent in his home rather than remove him that is the subject of the complaint here. Rather, it is the method of implementing that decision, or the day-to-day handling of decedent's case, which is the subject of Olson's complaint.

■ 2. The county and White also argue that as a matter of law White's actions were not the cause of decedent's death, and therefore they are not liable even if discretionary immunity does not apply. They rely on *Sayers v. Beltrami County*, 481 N.W.2d 547 (Minn.1992), where the supreme court reinstated a summary judgment even though it concluded discretionary immunity did not apply because it determined that, even if the county had acted properly, the injury at issue would not have been prevented. This case is distinguishable from *Sayers* because here Olson presented evidence showing that if White had visited the mother and decedent she would have noticed injuries on decedent and could have acted to prevent further injuries and his death. In her deposition, the mother stated that, during the period of time White was handling the case, there were outward signs of physical abuse on decedent. Specifically, she stated that decedent was so badly bruised on his head, back, buttocks, legs, shoulders, stomach, and chest she could not take him out of the house. This prima facie evidence is sufficient to withstand a motion for summary judgment, both as to negligence and causation.

## DECISION

Affirmed.