Frederick E. BETLACH, III, Appellant,

v.

WAYZATA CONDOMINIUM and
Douglas Peterson, Respondents,

Swanson-Abbott Development Co., et
al., Defendants.

No. 48795.

Supreme Court of Minnesota.

April 6, 1979.

Rehearing Denied July 11, 1979.

Brenner & Harroun and Bernard M. Harroun, Minnetonka, for appellant.

Gray, Plant, Mooty, Mooty & Bennett and Stephen J. Snyder, Minneapolis, for respondents.

Heard before KELLY, YETKA and WAHL, JJ., and considered and decided by the court en banc.

KELLY, Justice.

This case is before us on appeal from a summary judgment entered in the district court dismissing plaintiff's suit for specific performance of an alleged contract. We reverse.

The original negotiations between the parties had been initiated by plaintiff, who was interested in establishing a location for his jewelry enterprise. The building which plaintiff found to be most suitable was then owned by Ruth Herrick, who leased the property to Polly Berg, Inc. During conversation with Polly Berg, plaintiff learned that defendant Wayzata Condominium had obtained a first right of refusal on Polly Berg's lease should she decide to relocate her business. The lease was for a renewable 5-year term and included an option to purchase. The lease specified the price and the conditions under which the option could be exercised. Plaintiff also learned from Polly Berg that defendant Swanson-Abbott Development Company was acting as Wayzata's agent in its real estate dealings.

Plaintiff approached Swanson-Abbott regarding the possibility of subleasing the building. Swanson-Abbott encouraged him to submit an offer which he subsequently did by letter dated February 24, 1976. The letter proposed that the sublease commence on May 1, 1976, that the rent, including utilities, insurance and taxes up to $2,400 per year would be $1,100 per month and that defendants would give plaintiff notice of any intention to destroy the building by January 31, 1977. It additionally provided that if a determination to raze the building were made, the sublease would not expire until January 31, 1978, at which time plaintiff would be permitted to dismantle and move the structure. If it were decided not to raze the building, plaintiff would then have the right to assume Wayzata's lease, including the option to purchase. This first letter also expressed plaintiff's desire to rent only the ground floor of the building.

Appellant was informed by Swanson-Abbott that his offer was not satisfactory and he thereafter amended his proposal in a letter of February 27, 1976. The first change in plaintiff's proposal was that it now encompassed the sublease of the entire building. This letter stated that the rent was to be $725 per month, the same as in the present lease plus an amount, not to exceed $5,000, sufficient to cover Polly Berg's relocation expenses. In response, plaintiff received a letter from Swanson-Abbott also dated February 27, 1976. The letter provided that it was "[b]ased on our various conversations and your letters of February 24 & 27th  *  *  *." It went on to discuss the form of the sublease to be entered into by the parties and " *  *  * Acknowledge[d] [plaintiff's] check  *  *  * in the amount of $1,000.00 as a nonrefundable earnest money deposit to bind this agreement." It also provided that, "[w]e [defendants] will, however, reserve to ourselves the right to purchase the building  *  *  *." The concluding paragraph of this letter read as follows:

"In view of the mutual understandings outlined in your two letters and of the above we hereby accept your offer and bind ourselves to work out the balance of the details in good faith and as quickly as is practical."

The letter was signed by H. R. Swanson for Swanson-Abbott and was acknowledged by plaintiff.

Plaintiff subsequently moved into the building and commenced making monthly rent payments. He also began renovating the premises, incurring expenses of over $25,000 in the process. Defendants furnished plaintiff with a sublease which he found unacceptable and which he returned with some corrections and deletions. This amended version was similarly unsatisfactory to defendants, particularly with respect to plaintiff's belief that he was contractually entitled to assume the lease, including the option to purchase, should the respondent decide not to destroy the building. After several further meetings, negotiations broke down and plaintiff filed suit

praying for a decree of specific performance.

The district court granted defendants' motion for summary judgment, finding that no contract was formed by the parties' negotiations and holding that in the absence of a contract plaintiff could be no more than a tenant at will. Because we believe that there are genuine issues of material fact which were unresolved below, we must reverse and remand for an adjudication on the merits.

Plaintiff asserts that taken together, his letters of February 24 and 27 and defendants' response of the 27th which was executed by both parties, constituted a valid offer and acceptance, thus creating, assuming the presence of consideration, a binding and enforceable contract. The trial court, passing on the motion for summary judgment, found that no contract existed. The court's main rationale for such a finding was the reservation of the right to purchase the building expressed in defendants' response of February 27. The trial court held that this reservation altered the initial offer and therefore the purported acceptance could be no more than a rejection or counter offer. *Minar v. Skoog*, 235 Minn. 262, 50 N.W.2d 300 (1951).

Plaintiff contends that this language merely refers to the position of the parties prior to the time that plaintiff would be entitled to exercise his option as outlined in his first letter. In light of the earlier language in Swanson-Abbott's letter stating that the agreement was "[b]ased on our various conversations and your letters of February 24 & 27th," we find plaintiff's interpretation to be quite probable. The resolution of this problem raises genuine issues of fact, making summary judgment inappropriate. See, Rule 56, Rules of Civil Procedure.

Defendant contends, however, that because the parties contemplated a formal sublease, no contract could arise as a matter of law until its execution, citing in support *A. E. Staley Mfg. Co. v. Northern Cooperatives*, 168 F.2d 892 (8 Cir. 1948). This contention somewhat overstates the principle.

The question at issue is the intention of the parties. In cases where the parties have contemplated a later formalization of the agreement, courts look to whether or not the parties intended legal consequences to arise prior to the formal execution of the later instrument. If not, the general rule is that no binding contract has been created. 1 Corbin, Contracts, § 30. Here, however, there is some indication that the parties intended to be bound from the outset. Defendants' concluding statement from the letter of February 27 that, " * * * we hereby accept your offer and bind ourselves * * *," in conjunction with the tender of earnest money seems to support this supposition. This again is a question of fact.

We do not mean to imply by this decision any opinion as to whether a valid agreement exists between the parties. On appeal from a summary judgment it is the function of this court only to determine (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law. *Minneapolis, St. P. & S. S. M. R. Co. v. St. Paul Mercury-Ind. Co.*, 268 Minn. 390, 129 N.W.2d 777 (1964). Therefore in reversing we hold only that there are genuine issues of fact which must be resolved by the trial court after a full evidentiary hearing.

It should be noted on remand that all evidence offered to clarify or explain ambiguous terms in the letters should be admitted, as long as it is not for the purpose of varying terms whose meaning is plain. *Hayle Floor Covering v. First Minnesota Const.*, 253 N.W.2d 809 (Minn.1977).

Reversed and remanded.