**Ronald HENRY, as Trustee for the Heirs and Next of Kin of Jason Allen Henry, a minor; Christine Anne Henry, a minor, appearing by her Father and Natural Guardian, Ronald Henry, Appellants,**

v.

**STATE of Minnesota, Roger M. Thompson, individually and d.b.a. Thompson Tree Service, Respondents.**

No. CX–86–2013.

Court of Appeals of Minnesota.

June 9, 1987.
Review Denied Aug. 12, 1987.

Mark R. Kosieradzki, Sieben, Grose, Von Holtum, Schmidt & McCoy, Minneapolis, for Ronald Henry.

Hubert H. Humphrey III, Atty. Gen., Mary Ann Bernard, Sp. Asst. Atty. Gen., St. Paul, for State.

Peter C. Sandberg, Peggy Sue Juergens, Dunlap, Keith, Finseth, Berndt & Sandberg, Rochester, for Roger M. Thompson.

Heard, considered, and decided by CRIPPEN, P.J., and WOZNIAK and MULALLY,* JJ.

## OPINION

WOZNIAK, Judge.

Appellant Ronald Henry (Henry) sued respondents State of Minnesota and Thompson Tree Service (Thompson) to recover damages for injuries allegedly caused by

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

negligence in maintaining Helmer Myre State Park.

The trial court granted respondents' motions for summary judgment, finding that respondents did not create an artificial condition and that there was no evidence that the State knew of any problem with the tree that caused the injury.

Henry appeals, contending the trial court erred in granting summary judgment for the State because there were genuine issues of material fact regarding both these matters. We affirm.

## FACTS

On June 10, 1981, Ronald Henry, Angelyn Henry, and their two minor children, Jason and Christine, went camping in Helmer Myre State Park. The Henrys set up two tents. The parents slept in one and the children slept in the other. Early the next morning, a storm passed through the campgrounds with wind velocity of approximately 45 m.p.h. A large limb from a nearby tree fell on the children's tent. Both children were injured. Jason died a short time later, while Christine's injuries resulted in permanent atrophy of her lower extremities.

Helmer Myre State Park is part of the outdoor recreation system defined in Minn. Stat. § 86A.04 (1980). The campground where the accident occurred has some degree of development. Roads lead to each individual campsite. Each campsite has a concrete fire ring as the designated place for campers to build fires, a graveled area for parking cars or campers, and the grass is mowed on a regular basis. A building with showers and toilets, serviced by underground water, sewer and electrical lines, is located near the campsites.

Daniel Breva was the park manager in 1980 and 1981. He routinely made visual inspections of the campgrounds, checking for any unsafe conditions. On the day before the accident, Breva inspected the area where the accident occurred. He viewed the trees from the ground, but noticed nothing unusual or hazardous about the limb that later fell on the children's tent.

In 1980, about one year before the accident, a storm moved through Helmer Myre State Park and damaged a number of trees in the area. Breva contracted with Thompson Tree Service to remove trees and branches damaged by the storm. No evidence was presented that Thompson worked on the tree that later fell on the children's tent or that the tree was damaged by the storm in 1980.

The tree did not have a straight trunk. Two large limbs branched out forming a V-crotch. Examination of the tree after the accident showed internal decay and discoloration. Although the parties generally agreed that this could not be seen from the ground prior to the accident, they disputed whether the tree service workers could have seen any indication of decay from the cherry pickers used in trimming trees in that area in 1980.

In April 1983, Henry brought this action against the State and Thompson, alleging they negligently maintained the park and that their negligence caused the children's injuries. After some discovery, the trial court granted respondents' motions for summary judgment. The court ruled that the State was immune from liability under Minn.Stat. § 3.736, subd. 3(h). The court also ruled that no liability exists under the law of trespass because only a natural condition was involved and Henry presented no evidence that an employee of the State knew of any dangerous condition in the tree.

## ISSUES

1. Did the State create or maintain a dangerous artificial condition?

2. If so, did the State, through its employees, know that the dangerous artificial condition was likely to cause death or serious bodily harm?

## ANALYSIS

On appeal from a summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Con-*

*dominium,* 281 N.W.2d 328, 329, 330 (Minn.1979). We must view the evidence in the light most favorable to the party against whom the motion was granted. *Grondahl v. Bulluck,* 318 N.W.2d 240, 242 (Minn.1982). A "material fact" that will preclude issuance of a summary judgment is one of such a nature that will affect the result or outcome of the case depending on its resolution. *Zappa v. Fahey,* 310 Minn. 555, 556, 245 N.W.2d 258, 259–60 (1976).

1. The trial court determined the State is immune from liability pursuant to Minn. Stat. § 3.736, subd. 3(h). We agree. The legislature has immunized the State from liability for

> [a]ny loss arising from the *construction, operation, or maintenance* of the outdoor recreation system, as defined in section 86A.04, or from the *clearing of land, removal of refuse* and *creation of trails or paths without artificial surfaces,* except that the state is liable for conduct that would entitle a trespasser to damages against a private person.

Minn.Stat. § 3.736, subd. 3(h) (1980) (emphasis added). By specifically including such actions in the immunity statute, the legislature intended that no liability accrue to the State simply because it opened the woods to public access.

■ Subdivision 3(h), however, also creates an exception to the immunity it otherwise provides, subjecting the State to liability "for conduct that would entitle a trespasser to damages against a private person." *Id.* This exception exposes the State to liability for its failure to conform to the standard of conduct commensurate with the duty imposed under the law of trespass as outlined in the Restatement (Second) of Torts. *See Green Glo Turf Farms v. State,* 347 N.W.2d 491, 494 (Minn.1984) (citing Restatement (Second) of Torts §§ 333–339 (1965)). Under the Restatement, liability to a trespasser attaches if the possessor of land creates or maintains an artificial condition that is, to his knowledge, likely to cause death or serious bodily harm. Restatement (Second) of Torts § 335. Similarly then, the State is liable for bodily injury caused by its negli-

gence in creating or maintaining dangerous artificial conditions without adequate warnings, but is not liable for bodily injury caused by natural conditions.

■ Henry argues the park was an artificial condition, and soil compaction caused by its creation weakened the tree's health and left it susceptible to internal decay. Henry introduced expert testimony that soil compaction alters the nutrition condition of the soil. He analogizes this to a poisoning of the tree by the State.

We disagree with this analysis. Even if the construction of the park affected the health of the tree, this is not an artificial condition. Cases from this and other jurisdictions indicate that changes in natural environments do not create an "artificial" condition where the affected terrain duplicates nature, except that an artificial condition will be found if there is some type of trap or concealment. *See Davies v. Land O'Lakes Racing Association,* 244 Minn. 248, 255, 69 N.W.2d 642, 647 (1955) (no liability to trespassers for natural or artificial ponds in the absence of traps or concealments); *Cassel v. Price,* 396 So.2d 258, 264 (Fla.Dist.Ct.App.) (trespassing plaintiff injured when falling from mulberry tree onto partially-obscured pieces of brick and cement; no liability for conditions that are the same as those found in nature), *rev. denied,* 407 So.2d 1102 (Fla.1981); *Ostroski v. Mt. Prospect Shop-Rite, Inc.,* 94 N.J.Super. 374, 380–81, 228 A.2d 545, 548–49 (hillside with slope changed during construction, planted with shrubs and bushes considered a natural condition), *cert. denied,* 49 N.J. 369, 230 A.2d 400 (1967).

Because the case law is clear on this matter, we agree with the trial court's finding that there was no genuine issue of material fact regarding the existence of an artificial condition.

■ 2. The Restatement of Torts also specifically requires that the liability for injury attaches only if the defendant creates or maintains an artificial condition that "is, *to his knowledge, likely* to cause death or serious bodily harm." Restatement (Second) of Torts § 335 (emphasis added). The trial court correctly found

that the State had no knowledge that this particular tree was "likely" to cause injury or death. The park manager inspected the campsite and the tree frequently, including the day before the accident. The tree appeared to be perfectly healthy. Park employees are required to report any dangerous conditions to the park manager and they never reported any dangers relating to this tree. In 1980, the workers from the tree service had instructions to cut away any trees or limbs that were dangerous. Had they seen any danger or problem with the limb, they would have cut it off. Therefore, we agree with the trial court that no employee of the State knew of any condition in the tree that was likely to cause death or serious harm.

Further, section 335 of the Restatement requires actual knowledge rather than employing the "reason to know" standard found elsewhere in the Restatement. Language in a recent Minnesota case also indicates that this is not a "reason to know" standard. In *Green-Glo Turf Farms*, the supreme court stated: "Natural conditions are to be expected in a recreational area, and the owner should not be required to patrol the area or to make it safe for those who enter upon it." *Green-Glo Turf Farms*, 347 N.W.2d at 494–95. Because the State has no duty to inspect for hidden dangers, it is not reasonable to apply a constructive knowledge standard.

Finally, even if the "reason to know" standard is applicable as argued in the dissent, no state employee had a reason to know that the limb created a dangerous condition. Although the employees had general knowledge that V-joints were more dangerous and that compacted ground might cause diseased trees, the manager did a specific inspection of that tree. Upon inspection, he had no reason to believe the tree was either weakened by disease or dangerous. Certainly, the state employees had no reason to know that a severe windstorm would occur, causing the limb to break off. In short, whether the "actual knowledge" or "reason to know" standard is applied, the trial court did not err in granting summary judgment in this case.

**DECISION**

There was no genuine issue of material fact regarding the existence of an artificial condition or knowledge that harm was likely to occur. The order granting summary judgment was proper.

Affirmed.

CRIPPEN, J., dissents.

CRIPPEN, Judge, dissenting.

I respectfully dissent. The trial court's summary judgment improperly enlarges the limited immunity provided by Minnesota Statutes § 3.736, subd. 3(h) (1986).

Although the State enjoys statutory immunity for the construction, operation, and maintenance of outdoor recreation systems, the State remains liable for bodily injury caused by "the State's negligence" in "maintaining dangerous artificial conditions without adequate warnings." *Green-Glo Turf Farms v. State*, 347 N.W.2d 491, 494 (Minn.1984). In spite of evidence in this case that leaves genuine issues of whether the State negligently maintained dangerous conditions and whether these were artificial conditions, the trial court has determined these questions as a matter of law. The "blunt" instrument of summary judgment is used here to improperly eliminate a fair trial on the issues. *See Donnay v. Boulware*, 275 Minn. 37, 45, 144 N.W.2d 711, 716 (1966). Making matters worse, the disposition of this case serves to announce an erroneous rule of law, the proposition that negligence in maintaining dangerous conditions is provable only by evidence that the State has actual knowledge of the specific danger.

1. Artificial conditions.

The trial court has decided as a matter of law that the construction, operation, and maintenance of the outdoor recreation system at Helmer Myre State Park involves no artificial conditions. Given this decision, it is difficult to imagine State outdoor recreation systems that would fall outside the limited immunity declared in Minn.Stat. § 3.736, subd. 3(h) (1986). More to the point here, the decision improperly dis-

regards important evidence of record that the outdoor developments at Helmer Myre State Park materially changed the natural environment. In creating this campground, the State laid out roads, developed graveled parking areas for campsites, and constructed concrete fire rings. Buildings were constructed for services to campers, and these buildings are serviced by buried utility improvements. Testimony from both appellant's and respondent's expert witnesses established that the development of roads and other improvements in the park caused soil compaction that deprived the trees of oxygen and other nutrients, and made them susceptible to disease and decay. In this instance, injuries occurred because of disease and decay of a tree in the park. Construed in the light most favorable to appellants, the evidence here left a genuine issue of material fact regarding the existence of an artificial condition.

Numerous cases have been cited to suggest that Minnesota has adopted an expansive view on natural conditions, a view that necessarily encompasses the improvements made at this State park. *See Davies v. Land O'Lakes Racing Association,* 244 Minn. 248, 69 N.W.2d 642 (1955). *See also Cassel v. Price,* 396 So.2d 258 (Fla.1981); *Ostroski v. Mt. Prospect Shop-Rite Inc.,* 94 N.J.Super. 374, 228 A.2d 545 (1967). While many outdoor improvements merely duplicate natural developments, this notion does not permit disregard for evidence on road construction, graveled parking areas, concrete improvements, and adjacent buildings, or the extensive soil compaction that may be involved in some campground improvements. Moreover, the cases just cited deal in each instance with injuries resulting in part from play activity of children, which was not a factor in the immediate case. *See Slinker v. Wallner,* 258 Minn. 243, 249, 103 N.W.2d 377, 382 (1960) (quoting Prosser, *Trespassing Children,* 47 Calif.L.Rev. 427, 451 (1959), regarding the "impossible burden" in making one's land "completely child-proof")).

There is a fact question in this case whether the State created an artificial condition at Henry Myre State Park. That question should be resolved by a jury, not by a ruling on the law.

2. Negligence.

The trial court also concluded there was no genuine issue on the allegation that the State negligently constructed or maintained dangerous conditions. Here also, in my opinion, there is a genuine issue of material fact.

The manager of Helmer Myre State Park was aware that trees with V-joints have a high incidence of breakage, that when they break they fall in a predictable direction, and that in this case a branch extended out from a V-joint toward the campsite so that if it did break it would fall in the area used by campers. The manager also knew that construction of roads and other structures causes soil compaction that deprives trees of oxygen and other nutrients, thus compromising the health of the trees. This is sufficient evidence to raise a fact question of whether the State was negligent in maintaining a dangerous condition.

3. Actual knowledge.

It is evident here that the State actually knew (1) the danger of V-joints, particularly if the tree is diseased, (2) the particular hazard a certain V-joint created for the campsite in question, and (3) the risk of disease connected with the kinds of improvements made in this park. Even though the State did not have actual knowledge of the diseased condition of this particular V-joint, there is an appropriate jury question of whether the State's actual knowledge shows their negligence. It is even more definite that there is a jury question on the State's negligence in terms of the knowledge the State should have had. There is ample evidence here to establish a jury question whether the State should have appreciated that this V-joint represented a dangerous condition if diseased, and that this tree was specifically subject to the risk of disease and decay.

The trial court concluded the State is not chargeable with knowledge it should have had. The majority proposes to affirm this decision. This conclusion constitutes an erroneous declaration of law.

It is true that "the owner should not be required to patrol the area or make it safe for those who enter upon it." *Green-Glo*, 347 N.W.2d at 491. Examining this language, the trial court concluded the State has "no duty of inspection." There is no reason to translate a concept on the duty to patrol to one on the duty to exercise reasonable care in observation and investigation of the conditions of the premises. Moreover, this construction of words used by the supreme court in *Green-Glo* is inconsistent with the rule of law announced in that case.

According to the supreme court, the State is not immune from liability in connection with bodily injuries caused by the State's "negligence" in maintaining "dangerous" conditions. The supreme court traces its rule of law to provisions of the Restatement of Torts on the liability of a trespasser. *See* Restatement (Second) of Torts § 335 (1965). The Restatement speaks of a party's maintenance of conditions that "to his knowledge" is likely to be dangerous. There is no reason to read into this language a standard on actual knowledge. In fact, it was the intent of the drafters of section 335 to make constructive knowledge the appropriate standard. In their comment accompanying the section, the authors state:

> The rule stated in this Section applies only where the artificial condition is one which the possessor has knowingly created or maintained and which he realizes *or should realize* will involve a risk of death or serious bodily harm.

Restatement (Second) of Torts § 335 comment d (1965) (emphasis added). We should follow the standard of constructive knowledge indicated by the Restatement, the source of law on the subject that has been honored by the Minnesota Supreme Court. Application of the appropriate rule of law makes it even more evident that there is a jury question on negligence in this case.