**James P. LAWLER, Respondent,**

v.

**SOO LINE RAILROAD COMPANY, Respondent,**

**State of Minnesota, Appellant.**

**No. C6–87–2519.**

Court of Appeals of Minnesota.

June 14, 1988.

Review Denied Aug. 24, 1988.

William G. Jungbauer, Patrick R. Gillespie, Yaeger & Yaeger, P.A., Minneapolis, for James P. Lawler.

John F. Cook, Minneapolis, for Soo Line R. Co.

Hubert H. Humphrey, III, Atty. Gen., P. Kenneth Kohnstamm, Asst. Atty. Gen., St. Paul, for State.

Heard, considered and decided by SCHUMACHER, P.J., and FOLEY and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

Respondent James P. Lawler sued respondent Soo Line Railroad Company ("Soo Line") for damages sustained when a Soo Line train upon which Lawler worked derailed. Soo Line sued appellant, the State of Minnesota, for property damage arising from the same accident. Lawler released Soo Line, and joined Soo Line's suit against the state. The trial court denied the state's motion for summary judgment, which was based upon a claim of governmental immunity under Minn.Stat. § 3.736, subd. 3(e) and (h). This court accepted the state's appeal under *Anderson v. City of Hopkins*, 393 N.W.2d 363 (Minn.1986). We reverse.

## FACTS

Soo Line owns a narrow strip of land running through the William O'Brien State Park upon which it maintains railroad tracks. On September 14, 1982, a Soo Line train derailed in the park, injuring a brakeman and Lawler.

Soo Line submitted an engineer's report which gives a detailed description of the land and probable chain of events leading to the accident. In the southwest corner of the park, the tracks lay on an embankment which crossed a narrow stream. The stream passed under the embankment through a large culvert.

Approximately 700 feet upstream from the tracks, the state built a hiking trail. The trail consisted of crushed and compacted gravel, about three feet high. The stream ran under the trail through two culverts. Approximately 50 feet upstream from the trail, there was a beaver dam.

After an above average rainfall during the summer of 1982, the beaver pond was at or close to its overflow point. On September 9, 1982, there was a rainfall of 3.75 inches which caused the dam to overflow. The flow over the dam was significantly greater than the capacity of the culverts under the hiking trail, and the trail was also overtopped.

This overflow severely affected the stability of the dam. Water flowed over the dry side of the dam. The back-up on the dry side caused when the culverts under the trail failed "caused the trees and organic material which the beaver dam was constructed of to become unstable due to bouyancy," according to the engineer.

More rain fell over the next few days causing another overflow. Debris from the dam clogged the culverts under the trail, causing the back-up on the dry side of the dam to rise. On September 14, the dam burst, sending water and debris toward the railroad embankment. Debris clogged the culvert under the embankment and the water level rose on the upstream

side of the embankment until it became unstable and failed.

The engineer concluded that "the construction of the hiking trail downstream of the beaver dam contributed to the failure of the beaver dam during the runoff which occurred on September 14, 1982." Specifically, the placement of an obstacle behind the dam caused water to build up against the dry side of the dam. With water on both sides of the dam, the dam literally floated away.

## ISSUE

Is the state immune from suit under Minn.Stat. § 3.736, subd. 3(h) (1982)?

## ANALYSIS

Summary judgment is proper when no material issues of fact exist and one party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. On appeal, we must determine if triable issues exist and whether the trial court correctly applied the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

The version of the statute in effect at the time of the accident provided that the state and its employees are not liable for

> [a]ny loss arising from the construction, operation, or maintenance of the outdoor recreation system, as defined in section 86A.04, or from the clearing of land, removal of refuse, and creation of trails or paths without artificial surfaces, except that the state is liable for conduct that would entitle a trespasser to damages against a private person.

Minn.Stat. § 3.736, subd. 3(h) (1982). The occurrence in this case fits squarely within the portion of the statute providing immunity from "[a]ny loss arising from * * * creation of trails * * *."[1] The legal battle concerns the exception to immunity where such an occurrence "would entitle a trespasser to damages against a private person." This exception was considered in *Green–Glo Turf Farms, Inc. v. State*, 347 N.W.2d 491 (Minn.1984).

In *Green–Glo*, the supreme court affirmed a summary judgment granted to the state based on the same version of the immunity statute involved here. Green–Glo suffered property damage allegedly caused by the state's negligent operation of a system of pools in a state park. The state maintained a series of interconnected pools of between 2– and 3–foot depths for the purpose of growing underwater plant life. The state controlled the water levels by adding or removing "stop logs" between the pools which dammed or released water according to need. *Id.* at 493.

Over a period of three days, 5.61 inches of rain fell. A wildlife manager released a large amount of water from the pools to prevent the water from washing over the sides. The water drained off of the park land, and onto Green–Glo's land, destroying Green–Glo's crops. *Id.* at 493–94.

The state argued it was immune from suit under subd. 3(h) of the immunity statute. On appeal, the supreme court concluded that the statute provided immunity from "any loss," whether on the state's land, or outside the state's land. *Id.* at 494. The court also concluded that the statute did not deny equal protection because it distinguished between the total population of people injured through the negligence of the state; persons injured by conduct which would entitle a trespasser to

1. Judge Schumacher's dissent contains the text of the 1985 amendment to this statute. While we might agree that respondents could have a claim under the amended version, we are bound to apply the law as it existed at the time of the accident. When the words of a statute are unambiguous, we have no authority to resort to construction or interpretation. *Tuma v. Commissioner of Economic Security*, 386 N.W.2d 702, 706 (Minn.1986). Rather than confining state immunity to losses incurred by park users, the 1982 version of the statute bestows immunity from *any* loss. This plainly means the state may be immune from losses incurred by anyone, park user or not, so long as the injury is connected to the park. *See Green Glo Turf Farms, Inc. v. State*, 347 N.W.2d 491, 494 (Minn. 1984). Furthermore, amendment of a statute creates a presumption that the legislature intended to change existing law. *Larson v. Independent School District No. 314*, 289 N.W.2d 112, 122 (Minn.1979). Therefore, it may be presumed that the pre–1985 version covered both users and non-users.

damages against a private person may recover from the state; persons injured by less egregious conduct may not recover.

The court examined the classification in some detail before deciding whether it was rationally related to a legitimate goal. The court reasoned that

a trespasser is entitled to damages against a private possessor of land *only* if the trespasser has sustained *bodily harm* as a result of the possessor's failure to conform to the standard of conduct commensurate with the duty imposed under certain well-defined circumstances.

*Id.* (emphasis added) (citing Restatement (Second) Torts §§ 333–39). It later summarized the conditions which trigger the exception:

The state is liable for bodily injury caused to persons, whose presence within or outside of the recreational area is known or ought reasonably to be known, by the state's negligence in carrying out dangerous activities or in maintaining dangerous artificial conditions without adequate warnings, but the state is not liable for (a) bodily injury to persons whose presence is not readily foreseeable, (b) bodily injury caused by natural conditions, or (c) damage to property only.

*Id.*

█ Under *Green–Glo* it is clear that the state is immune from property damage claims. This precludes Soo Line's claim for damage to its equipment when the train derailed. Soo Line's contention that this provision in *Green–Glo* is mere dicta is unpersuasive, and the trial court should have dismissed Soo Line's claim.

Whether the state may be liable to Lawler for his personal injuries depends upon whether the state's conduct is of the kind that would permit a trespasser to sue a private person. The standard applicable to this case is set forth in Restatement (Second) of Torts § 335 (1965):

A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to

liability for bodily harm caused to them by an artificial condition on the land, if
(a) the condition
(i) is one which the possessor has created or maintains and
(ii) is, to his knowledge, likely to cause death or seriously bodily harm to such trespassers and
(iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and
(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

There are problems in applying this section to the facts of this case: what exactly is the condition, the hiking trail itself, or the release of rain water from a beaver dam. One condition may be dangerous, while the other is not. Also, once the condition is identified, it must be characterized as artificial or natural. Finally, the quality of the state's knowledge (actual or constructive) must be identified.

A similar problem was confronted in *Henry v. State*, 406 N.W.2d 608 (Minn.Ct. App.1987), *pet. for rev. denied* (Minn. Aug. 12, 1987). In *Henry*, this court affirmed summary judgment granted to the state based on the same section of the immunity statute involved here. The plaintiff in *Henry* sued the state on behalf of his children, one of whom was killed and another injured when a tree branch fell on their tent. The Henrys set up tents on a campground built and maintained by the state. Henry produced expert testimony that soil compaction caused by the creation of the campground "weakened the tree's health and left it susceptible to internal decay." *Id.* at 611. Henry argued that the park was an artificial condition that was also dangerous because it in effect poisoned the trees around it. This is analogous to Lawler's argument in this case that the hiking trail, an artificial condition, was dangerous because it weakened the natural dam next to it.

In *Henry*, this court ruled that that campground was not an artificial condition. Citing cases from this and other jurisdic-

tions, we concluded that changes in natural environments do not create an

"artificial" condition where the affected terrain duplicates nature, except that an artificial condition will be found if there is some type of trap or concealment.

*Id.* We similarly hold that the sudden release of rain water from a beaver dam in this case was not an artificial condition.

It is additionally clear that under *Green–Glo* and *Henry* actual knowledge is required before an exception to immunity may be established. Lawler has not produced any evidence from which a fact finder could infer that the state actually knew that the trail created a danger of death or serious bodily harm.

## DECISION

The trial court should have dismissed both claims against the state.

Reversed.

SCHUMACHER, Judge (dissenting).

I respectfully dissent. There is no dispute that the accident happened in September, 1982 and that the 1982 immunity statute applies. Minn.Stat. § 3.736 (1982). However, I disagree with the majority's conclusion that the immunity statute was intended to apply to non-users of the park. Reason and common sense indicate that the intent of the 1982 statute was only to apply to users. Additionally, strong evidence of this legislative intent appears in the 1985 amendment to the statute:

Any loss incurred by a user within the boundaries of the outdoor recreation system and arising from the construction, operation, or maintenance of the outdoor recreation system * * * (emphasis added).

Minn.Laws 1985, First Spec.Sess. ch. 16, art. 1, § 1.

Apparently in response to our supreme court's close decision (four justices dissenting) in *Green–Glo Turf Farms, Inc. v. State,* 347 N.W.2d 491 (Minn.1984), the legislature enacted this amendment to make explicit its intent that immunity only at-

taches when the injured party is a user of the park.

In this case, Soo Line and Lawler were clearly not users of the park. The state acquired the land to be used for park property in 1974, when the railroad had already been in place for a substantial number of years. At the time of the accident, Soo Line was using its own property. Because Soo Line and Lawler were not users of the park property, I would affirm the trial court's denial of the state's motion.