*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0181**

James Ariola as next of kin and trustee for Jack Ariola Erenberg, his son,
Appellant,

vs.

The City of Stillwater, Minnesota, et al.,
Respondents,
Washington County,
Respondent,
State of Minnesota Department of Health,
Respondent.

**Filed October 27, 2014
Affirmed in part, reversed in part, and remanded
Stauber, Judge**

Washington County District Court
File No. 82CV131070

John R. Neve, Evan H. Weiner, Neve Webb, P.L.L.C., Minneapolis, Minnesota; and

Roger Strassburg, (pro hac vice), Roger Strassburg, P.L.L.C., Scottsdale, Arizona (for appellant)

Pierre N. Regnier, Jessica E. Schwie, Jamie L. Guderian, Jardine, Logan & O'Brien, P.L.L.P., Lake Elmo, Minnesota (for respondent City of Stillwater)

Scott T. Anderson, Jennifer Bannon, Rupp, Anderson, Squires & Waldspurger, P.A., Minneapolis, Minnesota (for respondent Washington County)

Lori Swanson, Minnesota Attorney General, Jennifer Coates, Assistant Attorney General, St. Paul, Minnesota (for respondent State of Minnesota)

Considered and decided by Hudson, Presiding Judge; Stauber, Judge; and Kirk, Judge.

## UNPUBLISHED OPINION

**STAUBER**, Judge

Appellant challenges the dismissal of his wrongful-death claims against respondents Minnesota Department of Health, Washington County, and the City of Stillwater arising out of the death of his son from a brain infection caused by deadly amoeba in a lake. Because we conclude that appellant has stated viable claims against the city, we reverse the dismissal of appellant's claims against it. But we conclude that neither the department nor the county owed duties to the decedent, and thus we affirm the dismissal of appellant's claims against them.

## FACTS

Lily Lake is a body of fresh, untreated water situated within the City of Stillwater, which is located in Washington County. Lily Lake Park abuts Lily Lake and is owned and operated by the city. The city constructed certain improvements at the park, including picnic tables, shelters with BBQ grills, bathrooms, water fountains, an adult-league ball field, tennis courts, a basketball court, a sand volleyball court, an indoor ice arena, playground equipment, and a boat launch. The park also has a swimming beach with beach facilities that are maintained by the city and open to the public.

In constructing the swimming area, the city allegedly altered the lake bottom to create a shallow area of water. The shallow area results in especially warm water that is uniquely favorable for the proliferation of Naegleria fowleri, a microscopic free-living

and flesh-eating amoeba that is invisible to the unaided human eye. Naegleria fowleri is capable of hiding in the sediment of lake bottoms, where it is able to survive adverse environmental conditions. During its lifetime, Naegleria fowleri can assume three different forms: flagellate, trophozoite, or cyst. Of these forms, only the trophozoite is flesh-eating and deadly to humans.

The trophozoite becomes dangerous to humans when it enters the human body through the nose and establishes an infection. It then travels up the nasal passage, multiplying in numbers and eating the delicate membranes of the nose and sinuses until it reaches the brain. Once in the brain, the amoebae's feeding activities kill the brain tissue and cause brain inflammation, resulting in primary amoebic meningoencephalitis (PAM), a fatal condition.

In August 2010, seven-year-old Annie Bahneman died from PAM after being exposed to Naegleria fowleri. Information was subsequently published identifying several bodies of water, including Lily Lake, at which Bahneman was possibly exposed to Naegleria fowleri. But despite signs posted at the park addressing certain risks, including the risk of drowning in the absence of lifeguards, there were no signs posted after Bahneman's death addressing the potential presence of Naegleria fowleri in Lily Lake.

In early August 2012, nine-year-old Jack Ariola Erenberg (Jack) was exposed to Naegleria fowleri by swimming in Lily Lake. A few days later, on August 6, 2012, Jack died from PAM. Appellant James Ariola, Jack's father, subsequently commenced this wrongful-death action against the city, the county, and the Minnesota Department of

Health (respondents). Shortly thereafter, appellant served and filed a first amended complaint. Appellant's first amended complaint asserted claims that (1) respondents negligently failed to make safe or warn of artificial hazards to children; (2) respondents made negligent misrepresentations by posting warning signs about other dangers, while failing to post warning signs of the presence of Naegleria fowleri; (3) respondents failed to warn of artificial conditions involving the risk of injury or death; (4) respondents failed to exercise reasonable care to warn; (5) respondents failed to warn of a danger on real property; (6) respondents failed to satisfy a voluntarily assumed higher standard of warning; and (7) the county and the department aided and abetted the city's tortious conduct.

Respondents moved to dismiss the first amended complaint on the basis that it failed to state a claim on which relief could be granted. While the motions were under advisement, appellant moved for leave to file a second amended complaint. After a hearing, the district court granted respondents' motions to dismiss appellant's first amended complaint "in its entirety with prejudice." The district court dismissed appellant's claims against the city on the basis of recreational-use immunity. The district court also concluded that "to the extent that [appellant's] claims against the county and [the department] arise from their constructive possession of Lily Lake, they also are barred by the doctrine of recreational use immunity." The district court further concluded that, even if the county and the department "are not immune under recreational use immunity, [appellant] has not, and cannot, allege sufficient facts to establish the first element of a negligence claim against them: the existence of a duty of care." Finally, the

4

district court denied appellant's motion to amend "[b]ecause the claims in [appellant's] proposed second amended complaint would necessarily fail as a matter of law." This appeal follows.

## DECISION

In reviewing the district court's grant of a motion to dismiss under Minn. R. Civ. P. 12.02(e), the sole question before us is whether the complaint sets forth a legally cognizable claim for relief. *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003); *see also* Minn. R. Civ. P. 8.01 (requiring that pleadings "contain a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the relief sought"); *Roberge v. Cambridge Coop. Creamery Co.*, 243 Minn. 230, 232, 67 N.W.2d 400, 402 (1954) (stating that pleadings must be framed so as to give notice of the claim asserted and permit the application of the doctrine of res judicata). "[I]t is immaterial whether or not the plaintiff can prove the facts alleged." *Martens v. Minnesota Min. & Mfg. Co.*, 616 N.W.2d 732, 739 (Minn. 2000). Our review is de novo, and we must "consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party." *Bodah*, 663 N.W.2d at 553.

Our supreme court has held that motions to dismiss serve a "limited function," *Elzie v. Comm'r of Pub. Safety*, 298 N.W.2d 29, 32 (Minn. 1980), and recently reaffirmed that "[a] claim is sufficient against a motion to dismiss for failure to state a claim if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn.

5

2014) (quotation omitted). Thus, "'a pleading will be dismissed only if *it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded.*'" *Id.* at 602 (quoting *N. States Power Co. v. Franklin*, 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963)).

## I.

We first address appellant's challenge to the dismissal of his claims against the City of Stillwater. The district court dismissed appellant's claims against the city based on its determination that they were barred by recreational-use immunity under Minn. Stat. § 466.02 (2012). Generally, "every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function." Minn. Stat. § 466.02. But municipalities are immune from:

> Any claim based upon the construction, operation, or maintenance of any property owned or leased by the municipality that is intended or permitted to be used as a park, as an open area for recreational purposes, or for the provision of recreational services, or from any claim based on the clearing of land, removal of refuse, and creation of trails or paths without artificial surfaces, if the claim arises from a loss incurred by a user of park and recreation property or services. Nothing in this subdivision limits the liability of a municipality for conduct that would entitle a trespasser to damages against a private person.

Minn. Stat. § 466.03, subd. 6e (2012). The term "municipalities" as defined by Minn. Stat. § 466.01, subd. 1 (2012), includes both cities and counties.

Recreational-use immunity "does not wholly absolve [governmental agencies] from liability, it enables them to treat visitors, in the tort context, as trespassers rather

6

than licensees or invitees." *Sirek by Beaumaster v. State, Dept. of Natural Res.*, 496 N.W.2d 807, 809 (Minn. 1993). "A public entity is liable only if it violated the standard of care that a private landowner owes a trespasser." *Fear v. Independent School Dist. 911*, 634 N.W.2d 204, 213 (Minn. App. 2001), *review denied* (Minn. Dec. 11, 2001).

In determining the standard of care owed to trespassers, Minnesota follows "the standard of conduct imposed under the law of trespass as defined in Restatement (Second) of Torts §§ 333-339." *Sirek*, 496 N.W.2d at 809. Appellant argues that this case should be governed by section 339, which provides a liability standard for injuries to child trespassers. But our supreme court has rejected application of that standard in cases involving accompanied minors. *See Johnson v. Washington County*, 518 N.W.2d 594, 599 (Minn. 1994) (holding that even though the child was in the water alone, the general trespasser standard of section 335 was applicable because the child was under the supervision of adults); *Sirek*, 496 N.W.2d at 811 (holding that child-trespasser standard did not apply to child injured while visiting state trails with her parents because unaccompanied children did not frequent isolated state trail); *see also Henry v. State*, 406 N.W.2d 608, 610-12 (Minn. App. 1987) (applying section 335 standard in case where injured children were sleeping in tent adjacent to parents' tent), *review denied* (Minn. Aug. 12, 1987). Because Jack was accompanied by adults while swimming in Lily Lake, we apply the generally applicable trespasser-liability standard set forth in section 335.

Section 335 provides:

> A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability

7

for bodily harm caused to them by an artificial condition on the land, if

    (a)    the condition
        (i)    is one which the possessor has created or maintains and
        (ii)    is, to his knowledge, likely to cause death or seriously bodily harm to such trespassers and
        (iii)    is of such a nature that he has reason to believe that such trespassers will not discover it, and
    (b)    the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

Restatement (Second) of Torts § 335 (1965).

Appellant, as the plaintiff, will bear the burden of establishing that each of the elements of trespasser liablity has been met in order to defeat the city's claim of immunity. *Martinez v. Minnesota Zoological Gardens*, 526 N.W.2d 416, 418 (Minn. App. 1995), *review denied* (Minn. Mar. 29, 1995). Thus, appellant must ultimately prove to a factfinder that Jack's death was caused by (1) an artificial condition that was (2) created or maintained by the city and that (3) the city knew that the condition was likely to cause death or serious bodily harm. At this procedural juncture, however, we do not ask whether appellant has proved the elements; instead our focus is on whether appellant has sufficiently pleaded facts that, if proved, would meet the elements. *See Barton v. Moore*, 558 N.W.2d 746, 749 (Minn. 1997) (stating that, in appeal from rule-12.02(e) dismissal, elements of claim must be considered "in the context of pleading requirements in Minnesota").

We conclude that appellant has pleaded facts sufficient to support a claim of trespasser liability and thus to overcome the city's recreational-use immunity. Appellant alleges that Jack's death was caused by the artificial condition of the improvements at Lily Lake, which were created and maintained by the city, and that the city knew that the improvements at Lily Lake were likely to cause death or serious bodily harm. These allegations are sufficient to put the city on notice of the appellant's claims against it and state a valid claim for relief.

The city asserts, and the district court concluded, that Jack's death was not caused by the improvements to Lily Lake, but rather by the Naegleria fowleri. But causation is an issue of fact, often unsuitable for summary judgment. *See, e.g., Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 373 (Minn. 2008) ("Whether proximate cause exists in a particular case is a question of fact for the jury to decide."); *Ingram v. Syverson*, 674 N.W.2d 233, 237 (Minn. App. 2004) ("Where reasonable minds *can* differ on the issue of causation, the jury should resolve the issue, and it would be error to grant summary judgment."), *review denied* (Minn. Apr. 20, 2004). Similarly, it is premature to reject appellant's assertion of causation on a motion to dismiss under rule 12.02(e). *See Bodah*, 663 N.W.2d at 553, (stating that in reviewing 12.02(e) dismissal, appellate courts "consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party").

The city also asserts that the improvements to Lily Lake do not constitute an artificial condition. Although Minnesota caselaw has not defined an artificial condition, the comments to the Restatement (Second) of Torts provide that "a structure erected upon

9

land is a non-natural or artificial condition, as are trees or plants planted or preserved, and changes in the surface by excavation or filling, irrespective of whether they are harmful in themselves or become so only because of the subsequent operation of natural forces." Restatement (Second) of Torts § 363 cmt b (1965). The city asserts that the improvements to Lily Lake cannot be artificial conditions because they duplicate nature, relying on *Henry* and *Lawler v. Soo Line RR Co.*, 424 N.W.2d 313 (Minn. App. 1988), *review denied* (Minn. Aug. 24, 1988). The district court also relied on *Henry* in dismissing appellant's claims. In *Henry*, this court held that "changes in natural environments do not create an 'artificial' condition where the affected terrain duplicates nature, except that an artificial condition will be found if there is some type of trap or concealment." *Id.* at 611. Appellant argues that *Henry* is distinguishable because the Naegleria fowleri in Lily Lake *were* a trap or concealment. Again here, we conclude that it is premature to reject appellant's assertions.

Notably, both *Lawler* and *Henry* were decided under a summary-judgment standard, not under the notice-pleading standard that we apply here. *See Lawler*, 424 N.W.2d at 315 (stating summary-judgment standard of review); *Henry*, 406 N.W.2d at 610-11 (same). Moreover, in neither of those cases was there any indication that the government land owner was aware of any potential for danger. *See Lawler*, 424 N.W.2d at 317 (stating that there was no evidence "from which a fact finder could infer that the state actually knew that the trail created a danger of death or serious bodily injury"); *Henry*, 406 N.W.2d at 612 (approving district court finding that state had no knowledge

10

that tree was likely to cause injury or death).  Thus, it could not have been argued that the dangerous condition was a trap or concealment.

In explaining that an "artificial condition will be found if there is some type of trap or concealment," *Henry* cites *Davies v. Land O'Lakes Racing Ass'n*, 224 Minn. 248, 69 N.W.2d 642 (1955), 406 N.W.2d at 611.  In *Davies*, the supreme court held the evidence sufficient to support a finding of trespasser liability in a case arising out of a drowning in a drainage catch basin.  244 Minn. at 259, 69 N.W.2d at 649 (1955).  The supreme court framed the issue as being whether "this body of water, in the state in which it was permitted to exist . . . was a danger to trespassing children of tender age greater than the danger present in the ordinary, open, natural, or artificial body of water?"  *Id.* at 256, 69 N.W.2d at 647.[1]  Appellant asserts that the city created and maintained conditions at Lily Lake that caused a trap or concealment in the form of Naegleria fowleri.  We conclude that appellant has sufficiently pleaded a "concealed danger case" under *Davies*.  *See id.* at 256, 69 N.W.2d at 647.

The city also relies on *Martin v. Spirit Mountain Recreation Area Authority*, in which the supreme court held that the proper focal point to determine the existence of an artificial condition was the sideward slope of a ski trail that the respondent alleged caused his injuries, rather than the entire ski area.  566 N.W.2d 719, 723 (Minn. 1997).  But *Martin* too was a summary-judgment case subject to a different analysis than we apply here.  *Id.* at 721.  Moreover, there does not appear to have been any allegation in *Martin*

---

[1] Although *Davies* was decided under the child-trespasser standard of section 339, its analysis of traps or concealments nevertheless informs our analysis because, like section 335, section 339 requires that an injury be caused by an artificial condition.

that anything other than the sideward slope of the ski trail caused the appellant's injuries. *See id.* at 720 (summarizing respondent's allegation that "the sideward slope . . . was a defective and dangerous condition"). Accordingly, *Martin* is of limited utility to our analysis in this case.

Because we conclude that appellant sufficiently pleaded claims against the city that could, on some "evidence which might be produced consistent the with [appellant's] theory," *Walsh*, 851 N.W.2d at 604 (quotation omitted), survive the city's immunity arguments, we reverse the district court's dismissal of appellant's claims against the city. It may be that appellant ultimately will be unable to prevail at summary judgment or trial. In addition to their dispute over whether Jack's death was caused by an artificial condition, the parties sharply dispute whether the city knew that the conditions at Lily Lake were likely to cause death or serious bodily injury. We express no opinion regarding the viability of appellant's claims against the city under a summary-judgment standard. *See, e.g., DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (explaining that "there is no genuine issue for trial when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions"). We simply conclude that it is premature at this juncture to dismiss these claims. Accordingly, we reverse the dismissal of appellant's claims against the city and remand for further proceedings consistent with this opinion.

**II.**

We next address appellant's challenge to the dismissal of his claims against Washington County and the Minnesota Department of Health. The district court dismissed appellant's claims against the county and department that were based on a constructive possession theory as barred by recreational-use immunity. The court also concluded, alternatively as to the constructive-possession claims, that neither the county nor the department owed any duty to protect Jack. We agree that there was no duty owed, and because that conclusion is dispositive of the claims against the county and the department, we do not address the parties' immunity arguments in relation to the county and the department.

A plaintiff cannot prevail on a negligence claim if the defendant owed no duty to the plaintiff. *See, e.g., Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011). The determination of a whether a legal duty existed is a question of law reviewed de novo. *Id.* at 22.

The public-duty rule "requires that a governmental unit owe the plaintiff a duty different from that owed to the general public in order for the governmental unit to be found liable" in a negligence claim. *Radke v. Cnty. of Freeborn*, 694 N.W.2d 788, 793 (Minn. 2005). The public-duty rule is a specific application of the well-established principle that "a person has no common law duty to prevent a third person from injuring another unless there is some kind of special relationship." *Id.*; *see also Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 804 (Minn. 1979) (explaining that "the distinction between public duty and special duty is not a doctrine unique to governmental torts").

13

Under the rule, it must be determined whether a duty is "owed to the public in general (which cannot be the basis of a negligence action)" or "owed to individual members of the public (which can be the basis of a negligence action)." *Cracraft*, 279 N.W.2d at 804.

The district court applied the public-duty rule to conclude that neither the county nor the department owed any special duty to Jack and thus that neither could be held liable on a negligence claim. Appellant asserts that the district court's public-duty analysis is flawed because (1) the public-duty rule does not apply to all of his theories of liability and (2) the county and the department did owe special duties to Jack.

**A.**

Appellant asserts that (1) the public-duty rule does not apply to all claims asserted against governmental units and (2) he has alleged claims against the county and the department to which the rule does not apply. The first assertion is accurate; the second is not.

As the Minnesota Supreme Court explained in *Domagala*, although there is no duty to protect another from the conduct of a third party absent a special relationship, "general negligence law imposes a general duty of reasonable care when the *defendant's own conduct* creates a foreseeable risk of injury to a foreseeable plaintiff." 805 N.W.2d at 23 (emphasis added). This general duty attaches without regard to whether there exists a special relationship between the plaintiff and defendant. *Id.* at 23. "In other words, when a person acts in some manner that creates a foreseeable risk of injury to another, the actor is charged with an affirmative duty to exercise reasonable care to prevent his conduct from harming others." *Id.* at 26. As the court further explained in *Domagala*,

however, the duty to protect another from one's own conduct attaches only in the case of misfeasance, or "active misconduct working positive injury to others." *Id.* at 22 (quotation omitted). A duty does not attach when there is nonfeasance, or "passive inaction or a failure to take steps to protect [others] from harm." *Id.* at 22 (quotations omitted).

Applying these principles, we reject the county's assertion that the public-duty rule applies to all claims asserted against governmental units. *Cracraft* makes clear that the public-duty rule arises out of the common-law rules regarding a person's duty to protect another person from the misconduct of a third party. 279 N.W.2d at 804-06. *Domagala* reminds us that a person always has a duty to protect others from his own affirmative misconduct. 805 N.W.2d at 23. Accordingly, if a governmental unit engages in misfeasance that causes injury to an individual, and the governmental unit is not otherwise immune, liability should attach. *See Cracraft*, 279 N.W.2d at 803 (explaining that municipalities' duties to comply with the law "are analogous to those owed by private persons and a breach of such duties can be the basis of a lawsuit against the municipality just as it can be the basis of a lawsuit against private tortfeasors"); *cf. Gatlin-Johnson ex rel. Gatlin v. City of Miles City*, 291 P.3d 1129, 1133 (Mont. 2012) ("The public duty doctrine was not intended to apply in every case to the exclusion of any other duty a public entity may have. . . . It does not apply where the government's duty is defined by other generally applicable principles of law.").

Although there can be claims asserted against a governmental unit that do not require application of the public-duty rule, appellant has not alleged any such claims

15

here. Appellant asserts that the county breached a duty to order the city to close Lily Lake, citing Minn. Stat. § 145A.04, subd. 8(a) (2012). Regardless of its statutory basis, this is an allegation of nonfeasance, or the failure to act for the protection of another, which must be analyzed under the public-duty rule. Put another way, there is no allegation that the county engaged in affirmative conduct that put Jack in danger. Rather, the allegation is that the county failed to protect Jack from dangerous conditions not caused by the county. The public-duty rule applies to this allegation. Appellant asserts that the department breached a duty to order the county to perform its statutory duty, citing the department's general supervisory authority under Minn. Stat. §§ 144.05, subd. 1(c), 145A.04, subd. 1 (2012). As with the allegations against the county, these are allegations of failure to act for the protection of Jack, nonfeasance rather than misfeasance. Accordingly, the public-duty rule applies to these allegations as well.

**B.**

Appellant argues that, even if applicable, the public-duty rule does not bar his claims against the county and the department because each owed special duties to protect Jack from the danger of Naegleria fowleri at Lily Lake. We disagree.

In *Cracraft*, the Minnesota Supreme Court identified four factors that should be identified in determining whether a governmental unit owes special, as opposed to public, duties: (1) whether the governmental unit had actual knowledge of the dangerous condition; (2) whether persons reasonably relied on representations made by the governmental unit; (3) whether there is an ordinance or statute setting forth "mandatory acts clearly for the protection of a particular class of persons rather than the public as a

16

whole"; and (4) whether the governmental unit has increased the risk of harm. 279 N.W.2d at 806-07. The court has subsequently clarified that the *Cracraft* factors are "not exhaustive" and that this is no "bright line test." *Radke*, 694 N.W.2d at 794 (quotation omitted). Although all four *Cracraft* factors "should . . . be considered, all four need not necessarily be met for a special duty to exist." *Andrade v. Ellefson*, 391 N.W.2d 2d 836, 841 (Minn. 1986). Notably, recent cases recognizing special duties focus on the third *Cracraft* factor almost exclusively. *See, e.g., Radke*, 694 N.W.2d at 798 (explaining that third factor was "overwhelmingly dominant" to determination that county owed special duty to protect child-abuse victims); *Andrade*, 391 N.W.2d at 842-43 (citing third factor as "decisive" in case holding that county owed special duty to protect children in licensed daycare centers).

Given the procedural posture, we accept as true appellant's allegations that the county and the department had knowledge of the dangerous condition at Lake Lily. Thus, the first *Cracraft* factor might be met. But because none of the remaining factors—including the crucial third factor—is met, we conclude that neither the county nor the department owed special duties to protect Jack.

With respect to the second *Cracraft* factor appellant asserts that the City, County and/or State posted signs at Lily Lake warning of certain risks, including the risk of drowning in the absence of lifeguards, and the risk of Eurasian milfoil, an aquatic weed and that "by warning of the open and obvious risk of drowning, the signs raise the reasonable, negative inference that no hidden risks of comparable danger would be present." Appellant concedes that it is unclear whether the department or the county was

17

involved in posting the warning signs. Even assuming that the department and/or the county are responsible for the signs, these are not the types of representations that our supreme court has contemplated as imposing a duty on a governmental unit. *See Cracraft* 279 N.W.2d at 807 (rejecting a negative-inference argument of the type appellant raises here, explaining that a letter written by an inspector could be relied on with respect to enumerated problems, but that "no grounds for reasonable reliance exist with regard to hazards not set forth in the letter"). Accordingly, the second *Cracraft* factor is not met.

With respect to the third *Cracraft* factor, appellants cite portions of the Local Public Health Act, Minn. Stat. §§ 145A.01-.17 (2012). Nothing in these statutes, however, is aimed at protecting a particular class of individuals, as has been true in cases in which the supreme court has recognized special duties. *See Radke*, 694 N.W.2d at 797 (concluding that acts mandated by Child Abuse Reporting Act are for protection of "a particular class of persons—children who are identified in suspected abuse or neglect reports received by the county"); *Andrade*, 391 N.W.2d at 842 (concluding that Welfare Licensing Act "clearly mandates that small children in a licensed day-care facility are a particular protected class"). Accordingly, the third *Cracraft* factor is not met.

With respect to the fourth *Cracraft* factor, appellant asserts that the county and the department increased the risk of harm by failing to close or warn of the dangers at Lily Lake. The department persuasively asserts that this is an allegation of a failure to *decrease* the harm, rather than of conduct that *increased* the harm. The fourth *Cracraft* factor is not met when the risk of harm remains the same before and after the

18

governmental unit's alleged misconduct. *See Cracraft*, 279 N.W.2d at 808; *see also Andrade*, 391 N.W.2d at 843 ("Increasing the risk goes to whether a legal duty with tort sanctions should be imposed on the municipality; decreasing the risk goes to whether, assuming the legal duty exists, it was breached."). Accordingly, this fourth *Cracraft* factor is not met.

Based on the foregoing, we conclude that district court did not err by concluding that the duties imposed on the county and the department by the Local Public Health Act are public duties that cannot support a negligence cause of action. Accordingly, we affirm the district court's dismissal of appellant's claims against the county and the department.

**Affirmed in part, reversed in part, and remanded.**